PATRICK FLYNN et al., Administrators, etc., Respondents, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

F. having applied for an insurance upon his life, a physician, who was medical examiner of the defendant, and who was also the medical attendant of the applicant, called upon him to make the medical examination and to take and receive his application. The physician filled up the entire application, asking the questions and inserting the answers. F. gave full and accurate information in response to the questions before the answers were written, but the answers, as written by and under the advice of the physician, were some of them untrue. A policy was issued by which the statements in the application were made warranties. In an action upon the policy, *held* (CHURCH, Ch. J., and MILLER, J., dis-

senting), that the physician was not the agent of the company for the purpose of soliciting or filling out applications, nor was such authority incident to, or within, the apparent scope of his agency as medical examiner; that it therefore was not bound by his acts; and that by the breach of warranty the policy was forfeited.

*Flynn* v. *Equitable Life Assurance Society* (7 Hun, 387) reversed

(Argued November 29, 1876; decided December 19, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of the plaintiffs, entered upon a verdict.

This action was upon a policy of life insurance issued by defendant upon the life of John H. Flynn, plaintiffs' intestate,

By the policy, the declarations and statements made in the application were warranted by the assured "to be in all respects true and without the suppression of any facts relating to the health or circumstances" of the assured, and it was declared that the violation of this condition in any respect rendered the policy null and void.

The application contained, among others, the following interrogatories:

"Whether the applicant ever had disease of the kidneys, disease of the bladder, diseases of the brain and nervous system, any serious illness or local disease." The answer was: "Whooping-cough, measles; no effects from them." The application also contained a direction for him to give the name and residence of his usual medical attendant, and to state "on what occasions and for what diseases he had required his attendance and advice." His answer was: "Ransom H. Vedder, Chatham Center; nothing but debility and slight bilious difficulty."

The application also contained the further interrogatory, whether he had "consulted any other medical man, if so, for what, and when?" The answer was, "No."

It was further made a condition of the insurance that any untrue or fraudulent answers, or any suppression of facts in regard to the health of the party, should render the policy null and void. It appeared on the trial that, in 1866 and

1867, the assured had some serious disease of the bladder or urinary organs, and had been operated upon therefor in the hospital in New York; and that he had also consulted doctors not named by him in his application; also, that, in 1869, he had given indication of brain difficulty or disease, which, however, it would seem, was of short duration.

The evidence given on the part of the plaintiff to meet and answer these facts, and the rulings of the court thereon, are set forth in the opinion.

*Ashbel Green* for the appellant.    The medical examiner was not authorized to represent defendant as agent. (*Harris* v. *Wilson*, 1 Wend., 511; *Small* v. *Smith*, 1 Den., 586; *Storey* v. *Brennan*, 15 N. Y., 526.)   He had no power, in his capacity as medical examiner, to change the contract. (*Foot* v. *Ætna L. Ins. Co.*, 61 N. Y., 571; *Smith* v. *Ætna L. Ins. Co.*, 49 id., 211; *Vose* v. *Eagle Ins. Co.*, 6 Cush., 42; *Nat. L. Ins. Co.* v. *Minch*, 53 N. Y., 151; *Valton* v. *Nat. L. Ins. Co.*, 1 Bigelow Cas., 453, note.)   The knowledge of an agent of defendant of the falsity of the answers contained in the written application would not entitle plaintiffs to recover. (4 Daly, 285; 61 N. Y., 571; 6 Cush., 42.)

*Robert Payne* for the respondents.    The representations and advice of the medical examiner to the insured, when the application was taken, bound defendant; his acts being within the apparent scope of his authority became the acts of defendant. (*Plumb* v. *Cat. Co. Mut. Ins. Co.*, 18 N. Y., 392; *Rowley* v. *Empire Ins. Co.*, 36 id., 550; 4 Abb. Ct. App. Dec.; 3 Keyes, 557; Bliss on L. Ins. [2d ed.], §§ 276, 280, 291; *Mersereau* v. *Phœnix Mut. L. Ins. Co.*, 2 N. Y. W. Dig., 585; 20 Wal., 560; 51 N. Y., 117; 26 id., 460; 57 Barb., 619; 10 Abb. [N. S.], 166; *Pierce* v. *Nashua Ins. Co.*, 9 Am. R., 235; *Miner* v. *Phœnix Ins. Co.*, id., 479, 482; *Clark* v. *Un. Mut. Ins. Co.*, 40 N. H., 333; *Masters* v. *Mad. Co. Mut. Ins. Co.*, 11 Barb., 624; *Protection Ins. Co.* v. *Harmer*, 2 Ohio St., 452; *Beal* v. *Park F. Ins. Co.*, 16 Wis.,

241; *Hough* v. *City F. Ins. Co.,* 29 Conn., 10; *Kelly* v. *Troy F. Ins. Co.,* 3 Wis., 268; *How. F. Ins. Co.* v. *Bruner,* 23 Penn. St., 50; *Ames* v. *N. Y. Un. Ins. Co.,* 14 N. Y., 253; *May* v. *Buckeye Mut. Ins. Co.,* 25 Wis., 291; *Col. Ins. Co.* v. *Cooper,* 50 Penn. St., 331.) Defendant was estopped from showing that the health of the insured was different from what it had, through its agent, declared in the application. (14 N. Y., 253; *Alexander* v. *Ger. F. Ins. Co.,* 5 Sup. Ct. R., 208; *Am. L. Ins. Co.* v. *Mahone,* 21 Wal., 152; *Ins. Co.* v. *Wilkinson,* 13 id., 222; *Boos* v. *World Mut. Ins. Co.,* 6 Sup. Ct. R., 364; *Baker* v. *Home L. Ins Co.,* Ct. App, M'ch 2, 1876.)

Earl, J. It is undisputed that certain statements contained in the application for the insurance as to the health of the assured and the physicians whom he had consulted were untrue, and that he should, on that account, have been defeated at the Circuit but for the evidence of Dr. Vedder.

The evidence tends to show that one Corey was the agent of the defendant to take applications for insurance. It does not appear where he resided nor how extensive his powers were. The utmost that can be claimed is that he was an agent to solicit and take applications for insurance.

Some time before April 20, 1871, the day on which the application was written, the assured applied to some one (it does not appear to whom) for insurance upon his life. Dr. Vedder was at the time one of the medical examiners of the defendant for the section of country in which the assured resided. He was also the usual medical attendant of the assured. He received a letter from Corey in reference to the insurance and then called upon the assured to make the medical examination and take and receive his application. It does not appear where the blank application came from, nor whether the assured or Dr. Vedder produced it. He informed the assured that he had come to examine him for a life policy and then took the blank application and commenced to ask the questions therein contained and insert the answers.

In answer to a question whether the assured had had any

one of the numerous diseases mentioned (among them disease of the bladder, disease of the kidneys, disease of the brain and nervous system), he replied, "You know that little sickness that I had down yonder?" alluding to a time some two years before, when, for a brief period, he was insane, and the doctor replied, "we called that insanity; but we were a little mistaken, it was nothing more nor less than an undue excitement from a specific cause, and it is not worth while to make mention of it." The assured also called his attention to the fact that he had had some difficulty about his kidneys or bladder, and that Dr. Van Buren, of New York, thought he had the gravel. Dr. Vedder said that Dr. Van Buren was mistaken, and that he had prescribed for him and cured him. The doctor then wrote in the application in answer to the question, "Whooping cough, measles — no effects from them," omitting all mention of the kidney, bladder or gravel difficulty. In answer to the question, "Has the person had any serious illness, local disease or personal injury?" the doctor advised him that he had known him for ten years and he had had no serious illness, and wrote "No" for the answer. After the assured had answered the question as to his usual medical attendance, the following question was read to him: "Have you consulted any other medical man; if so, for what and when?" and under the advice of Dr. Vedder "No" was written for the answer.

Now, all these answers were, in fact, untrue. They were all given as they appear under the advice of Dr. Vedder, and he wrote them and filled up the entire application and it was then signed by the assured.

The doctor then made his medical examination and reduced it to writing and then sent the application with his medical report annexed, to the agent, Corey, and the policy was subsequently issued, based upon the application. The judge at Special Term, while holding but for the evidence of Dr. Vedder that the plaintiff could not recover, held that if the jury believed the doctor's evidence, then he was the agent of the defendant and the defendant was bound by what he did; that

it could not complain of answers which it, through its agent, advised the assured to give and wrote in the application.

In the disposition of this case I will assume that there was no collusion between the assured and Dr. Vedder, and that the assured gave to the doctor full and accurate information as to all the questions asked before his answers were written, and yet I reach a conclusion adverse to the plaintiffs.

Doctor Vedder testified that he had never been appointed the agent of the defendant to procure applications for insurance, and that he had never acted as such. He was simply the medical examiner of the defendant, and was never held out by it as an agent for any other purpose. As medical examiner it was simply his duty to ascertain and report to the company the physical condition and state of health of an applicant for insurance, by filling up the blank report and obeying the instructions furnished to him. (Reynolds on Life Assurance, 123; Bunyan on Life Assurance, 51; Angell on Life and Fire Insurance, § 283.) He had no authority from the defendant to solicit applications for insurance, or to fill up applications, and such authority was not incident to his agency as medical examiner, nor within the apparent scope of such agency. The assured did not apply to him for insurance, and the doctor did not even claim to him that he had any authority except to examine him for insurance. It does not appear that the defendant even knew that the doctor had any thing to do with procuring and writing this application, and hence it in no way ratified his acts. He, therefore, had no more authority to act for the defendant in taking and writing this application than any other friend of the deceased would have had. His medical report, which he, as medical examiner, was required to make, was a matter distinct from the application. That was made upon his responsibility, was signed by him alone, and was in no way part of the policy. But the application was the act of the assured, for which he was responsible, was signed by him and made part of the policy.

There are cases to be found in the books where insurance companies have been held bound by misstatements contained

in applications made or written by or under the advice of their agents authorized to solicit insurance and take applications. (*Plumb* v. *Cattaraugus County Mutual Insurance Co.*, 18 N. Y., 392; *Rowley* v. *Empire Ins. Co.*, 36 id., 550; *American Life Insurance Co.* v. *Mahone*, 21 Wallace, 152; *Miner* v. *Phœnix Ins. Co.*, 9 Am. Rep., 235; *Baker* v. *Home Life Ins. Co.*, decided in this court, but not yet reported.*) But without now stopping to inquire what the true rule in such cases should be, this is not like any of the cases cited. Dr. Vedder was not the agent of the company in reference to the application, and hence the company was not bound by any thing he did in reference thereto.

It follows from these views that the judgment must be reversed and new trial granted, costs to abide event.

All concur, except CHURCH, Ch. J., and MILLER, J., dissenting.

Judgment reversed.