AMELIA McARTHUR, RESPONDENT, *v.* THE GLOBE MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

*Application for policy of insurance — answers filled in by general agent having full knowledge of the facts — effect of falsity of, upon policy*

In October, 1873, one McArthur applied to B. & B., who were the agents of the Guardian Life Insurance Company, for a policy in that company. The application was refused. B. & B. were also the general agents of the defendant. Subsequently, Cooper, who was a sub-agent employed by B. & B., solicited McArthur to apply for a policy in defendant's company, telling him that the policy was refused by the Guardian, principally because it was going out of business, although nominally placed on the ground of the certificate of the medical examiner. An application was then produced, read over to McArthur, and all the questions but three answered, and the application was then signed by McArthur. These three questions were, at the suggestion of Cooper, left to be answered by the general agents. Two of these inquired whether any other application for life insurance had ever been declined, and called for a statement as to company and cause. Cooper delivered the application to B. & B., called their attention to the unanswered questions, and said he did not know how to answer them, and also attached a slip thereto, stating the refusal of the application by the Guardian, and the reason therefor. Subsequently, by direction of B. & B., he filled in as answers to the questions, the word "No."

A policy having been issued upon the application, and this action having been brought by McArthur's widow to recover the amount of the policy, it having been taken out for her benefit; *held*, that as the answers to the questions were filled in by the general agents of the defendant, who had full knowledge of all the facts of the case, the policy was not avoided by their falsity, and that plaintiff was entitled to recover. .

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and purporting to be also from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried, (no such order, however, appearing in the case on appeal).

*Robert Sewell,* for the appellant.

*W. E. Hughlit,* for the respondent.

TALCOTT, P. J.:

This is an appeal from a judgment for the plaintiff, entered on a verdict taken at the Cayuga Circuit, and also purports to be an

appeal from an order denying a motion for a new trial on the minutes. There is no such order contained in the case, and no record evidence before us that any such motion or order was made, consequently this can only be treated as an appeal from the judgment, and only the exceptions contained in the case can be considered.

The action was upon a policy of life insurance on the life of Olin McArthur, of Fairhaven, in Cayuga county, insured by the defendant in the name of, and for the benefit of, his wife, Amelia McArthur, the plaintiff. " Beecher & Bancroft " were agents of the defendant at Syracuse, and as such they employed one Cooper to solicit insurance in the county of Cayuga. Beecher & Bancroft had also been the agents of the Guardian Life Insurance Company, which had discontinued business. The insured had made an application to the Guardian company whilst Beecher & Bancroft were its agents. The application passed through the hands of Beecher & Bancroft, to whom the rejection of the risk was communicated by the Guardian company, and they communicated the rejection to McArthur, through Cooper. This rejection was in October, 1873. Cooper testified that after the rejection by the Guardian company, he had a conversation with Beecher several times about insuring McArthur in the Globe company, and that Beecher told him to take it, and they would send it to the Globe. Cooper then applied to McArthur to take an application in the Globe company. McArthur said he had concluded to carry the insurance himself; that is, that he did not want any policy of insurance, and expressed some doubt whether the Globe company would issue a policy. Cooper informed McArthur that the policy was refused by the Guardian company principally for the reason that that company was about quitting business, although they made the examiner's remarks the basis of the refusal of the risk. Cooper then produced a blank application for insurance by the defendant, which contained some thirty-five questions to be answered by the party whose life was proposed to be insured. Cooper read the application to McArthur, and wrote his answers to the questions until he came to question number thirteen, which was a question inquiring of the applicant whether he had been afflicted since childhood with any of the complaints named, proceeding to specify

numerous complaints. McArthur answered no to all but the latter part of the question, which was whether he had been afflicted with " diseases of the urinary organs or bladder." When Cooper arrived at this question, he said: " You remember saying that you had been troubled with the backache, and this is the only question that it will come under, and I will leave this blank, and let Beecher & Bancroft direct about that."

This was an allusion to what McArthur had informed the medical examiner in the case of the application to the Guardian company, and which was the ostensible cause of the rejection of the application by that company. The answer to that question was left blank. McArthur then answered the questions which followed, down to questions, respectively, numbered twenty-eight and twenty-nine, which inquired whether any proposal to insure the life of McArthur had ever been declined; if so, by what companies and for what cause, and whether any proposal to insure his life had ever been made to any company upon which a policy had not been issued; and if so, calling for a statement of what company or agent. McArthur and Cooper talked about these questions, and Cooper told McArthur he would also leave the answers to those questions blank, and forward a statement to the general agents, and let them answer it, as they probably had the original application to the Guardian company. Cooper then read the application over to McArthur, and the latter signed it, with the answers to the three questions above specified left blank. Cooper then took the application, with the answers to said questions left blank, to the office of Beecher & Bancroft, and talked with them about the application, calling their attention to the blank answers, and telling them that he did not wish to fill them up or make any remarks about them, until he saw Beecher & Bancroft, and let them fill out the answers or show the witness how to do it. Cooper states that he had attached a slip to McArthur's application to the Globe company, stating that McArthur's application had been declined by the Guardian company, and for what reason. Bancroft informed him that the application to the Guardian company was not declined for cause, and that the questions should be answered " no;" and Bancroft then asked Cooper to go on and finish the application. Cooper replied that he would do so if it

was proper. Bancroft replied that it was, and Cooper then wrote the answer "no" to the three questions to which the answers had been left blank when McArthur signed the application. Cooper left the application with Bancroft, who subsequently handed it to Beecher. Cooper also handed to Beecher the "statement of the application," meaning the slip, showing that the Guardian company had declined the previous application of McArthur. Beecher said it was of no importance, but if necessary he would send it along. This is the substance of the testimony of Cooper relative to the manner in which the answers to the questions which had been left blank were filled up, and we must assume that the jury found his statement to be substantially correct.

Our attention is directed only to the exceptions taken by the defendant to the refusal of the justice, at the trial, to charge as requested in several particulars.

The defendant's counsel requested the court to charge, "that if the negative answers to the two questions, twenty-eighth and twenty-ninth, were made by Cooper without the direction or concurrence of the general agent." The case omits to state what the defendant's counsel desired the court to charge would be the legal consequences, if those questions were negatively answered without the direction or concurrence of the general agents, but we assume that it was, in effect, that the plaintiff in such case would not be entitled to recover. To this the court answered : " I do so charge, that if they were answered by any body except the general agent of the defendant, or by their direction, he cannot recover."

The counsel for the defendant excepted to so much of the charge as holds — that if the answers were inserted by the direction of Beecher & Bancroft, then the policy is not violated, and that the warranty, etc.

The judge had instructed the jury as follows : " If the application went out of his (McArthur's) hands with those questions unanswered, and the negative answers now found attached to it were inserted there by anybody except the defendants themselves, or their agents, Beecher & Bancroft, or by their direction, in that case no recovery can be had upon it, and it is void. But if that application went out of the hands of the applicant with

the questions unanswered, with the expectation and direction that it should be left with the general agents of the defendant to supply the answers to those questions, in accordance with the facts of the case, which facts were known to them, then I charge you that those false answers are not the answers of the applicant; that he and his widow are not chargeable with the falsity of those answers, and the policy was not vitiated by them; but it was a good contract on the part of the defendant, and the plaintiff is entitled to recover the amount which I have stated to you."

The counsel for the defendant requested the court to charge,. " 1. That the plaintiff is responsible for the truthfulness of the several answers contained in her late husband's application, and that they are in the nature of warranties."

" 2. That if any such answers were untrue, such fact constitutes a breach of warranty which must deprive the plaintiff of any right to recover in the action."

" 3. That Beecher & Bancroft could not bind the defendants by directing the insertion of untruthful answers to questions."

These several requests were declined by the justice, except as he had charged, and the defendant's counsel excepted. The justice had charged most fully and explicitly on those questions, and the subject of his views as expressed to the jury is given in the above extract from the charge.

There was no question raised on the trial but that Beecher & Bancroft were the general agents for the defendant. The application was headed, " Recommended by Beecher & Bancroft, General Agents." It was so sent to the defendant, and it does not appear that the defendant ever repudiated the title thus bestowed upon them, or that the applicant was ever informed of any limitation upon the agency of Beecher & Bancroft. The counsel for the defense on the trial, as appears by his first exception, assumed that Beecher & Bancroft were " general agents," and there was nothing in anything which transpired at the trial to call the attention of the judge, in any manner, to the fact that the general agency of Beecher & Bancroft was questioned. We must understand, therefore, that the exceptions taken by the defendant's counsel were intended, or at least understood by the court, to draw in question, not the fact that Beecher & Bancroft were the " general

agents " of the defendants, but to ask an instruction to the effect that the general agents of the company could not bind it by the insertion of answers to questions which were, perhaps, untrue in point of fact, but where they were familiar with all the facts, and where the applicant, knowing that the general agents were well acquainted with all the facts, left the answers to the questions indicated to be inserted by the general agents, with such explanations as they might deem necessary or proper under the circumstances.

It was held in *Flynn* v. *The Equitable Life Insurance Co. Society of the United States*, that one who was merely authorized by the company to make medical examinations of applicants for life insurance, but having no authority to solicit applications, and who had never acted as or been held out by the company as an agent for any other purpose, did not bind the company by the insertion of false answers to the questions propounded to the applicant, and that the authority to insert answers to the questions was not incident to, or within the apparent scope of his agency as medical examiner. Yet the same case concedes that companies may be bound by mis-statements contained in applications written by, or under the advice of their agents authorized to solicit insurance and take applications. (See cases cited by EARL, J., in the opinion, in 67 N. Y., 500.)

In *Merserau* v. *The Phœnix Life Ins. Co.* (66 N. Y., 274), it was held that where the policy contained a clause whereby the powers of the agent were limited, and he had no authority by the express limitation to receive any premium without first presenting a receipt signed by the president or secretary, an agent to solicit and take applications for insurance, to issue and deliver policies, and to receive premiums and deliver receipts for them, was not as a matter of law, a general agent of the company, authorized to waive conditions in a policy as to payment of premiums ; but on the question whether a general agent of an insurance company can waive the condition forfeiting the policy in case of non-payment of the premium, the Court of Appeals seems to have been equally divided, a majority having been reached on the first proposition by the vote of FOLGER, J., who thought the "facts put to the jury, as sufficient as matter of law to make him (Weller) a

general agent, were not enough for that purpose." FOLGER, J., declining to vote on the general question, whether upon a policy upon which was endorsed a notice that no agent has authority to receive any premiums without first presenting a receipt signed by the president or secretary of the company, or to alter the policy, or to receive any premium after it is due, a general agent can waive the condition forfeiting the policy in case of non-payment of the premium; and the residue of the court being equally divided on the question. (See, also, *Van Schoick* v. *The Niagara Fire Ins. Co.* 68 N. Y., 434.)

But this question does not involve the question of the powers of a general agent, as such, so much as the question of whose agents Beecher & Bancroft were, in regard to an application for insurance, the agents *being well acquainted with all the facts*, and whether they could, in behalf of the defendant, direct what answer the applicant should give to certain questions propounded to him, and as to which he is in doubt what answer should be given. In this case it was natural for the applicant to suppose that if his application to the Guardian company had not been declined, in fact, for any cause affecting the nature of the risk, but solely because they were about to retire from the business; that the rejection of the application to the Guardian company would not be considered material, and that Beecher & Bancroft having been the agents for the Guardian company at the time when his application was made, would understand better than himself, the policy which led the latter company to reject the application, and that their explanation to the Globe company would be more satisfactory than any which could be made by him.

And the applicant was justified in supposing that Beecher & Bancroft would make all necessary explanations to the Globe company, of the circumstances of his previous application to the Guardian Company. According to Cooper's testimony, he desired and expected that the " slip," which was by him attached to the application, stating the prior application to the Guardian company should be sent to the Globe company, with the application.

Whether this was done or not, does not appear. If it was omitted, the omission was due to the neglect or intention of the agents of the defendant, who, in their capacity of agents, received

the " slip;" and the omission to send it forward, if there was such omission, was their omission, as agents of the defendant, to forward a communication to the company, truly stating the facts in reference to the prior application. It was to be considered a part of the application, according to Cooper's testimony. If the information contained in the " slip " had been given to the defendant, it could not be pretended that it could make any objection that the prior application was not disclosed, or was denied, in the answers filled in to the printed application.

We think the judgment should be affirmed, notwithstanding any of the exceptions to which our attention has been directed.

Present — TALCOTT, P. J., SMITH and HARDIN, JJ.

Judgment affirmed.