PATRICK FLYNN AND MAURICE B. FLYNN, AS ADMINISTRATORS OF JOHN H. FLYNN, DECEASED, RESPONDENTS, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, APPELLANT.

*Application for insurance — when the company is bound by the acts of its officer, in wrongfully filling in answers.*

An agent of the defendant, doing business in New York, having authority to deliver policies and receive payment of the first premium, sent from the company's office in New York a blank application to Dr. V., a medical examiner of the company, and requested him to take the application and make the examination of plaintiffs' intestate. Dr. V. went for that purpose with the blank application, put the questions and received truthful answers; but the answers as written by him were some of them untrue. The deceased signed the application, but never saw the answers. The defendant's agent approved the risk in writing upon the application, on which he was named as the agent of the company. There was no collusion between the applicant and the doctor, or any attempt to cheat the company. By the policy, the statements in the

application were made warranties. The judge charged the jury that if Dr. V. was there as the agent of the company for the purpose of receiving and preparing this application, then the plaintiff might recover. The jury found for the plaintiff.

*Held*, that under the circumstances the company was bound by the acts of its medical examiner, and that the plaintiffs were entitled to recover the amount of the policy.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover the amount of a policy of insurance, issued upon the life of the plaintiffs' intestate by the defendant.

The defense was a breach of warranty, in that certain answers to questions contained in the application were untrue. It appeared that one Corey, an agent of defendant, doing business in the city of New York, wrote to one Dr. Vedder, a medical examiner for defendant, sending a blank application, requesting him to go to the deceased and fill it up, leaving the agent's name blank; to make the medical examination, and return the application to Corey. This was done, the application was approved by Corey, and a policy was issued by defendant.

In answer to certain questions as to diseases which Flynn had had, he stated the facts truly to Dr. Vedder, but the latter wrote down answers which were untrue, it being stated therein that plaintiffs' intestate had not suffered from the diseases referred to in the questions, whereas, in fact, it appeared that the deceased had suffered therefrom.

Upon the first trial the plaintiffs had a judgment, which was affirmed at General Term (7 Hun, 390), but reversed in the Court of Appeals (67 N. Y., 500.).

Upon the second trial the plaintiffs again recovered, and from that judgment this appeal was taken.

*Ashbel Green*, for the appellant.

*Robert Payne*, for the respondents.

*Per Curiam:*

When this case was before the Court of Appeals, it was held, as a matter of law, that, upon the evidence, Dr. Vedder was not the agent of the company in reference to the application, and that therefore the company was not bound by anything he did in reference thereto. (67 N. Y., 500.) In coming to this conclusion the court say, in regard to Corey, the agent of the defendant, that it does not appear where he resided, how extensive his powers were; that the utmost that can be claimed is, that he was an agent to solicit and take applications for insurance. Again, the court say that it does not appear where the blank application came from, nor whether the assured or Dr. Vedder produced it. These statements are now referred to, in order to ascertain whether the present evidence is any more full than that of which the court then took notice, and on which they seem to have decided the case.

It appears that Corey is named as the authorized agent of the company on the application on which the company acted; that he approved the risk in writing thereon; that it was his duty to see that all the questions in the company's form were answered; and by the policy it appears that he was authorized to deliver it and receive the first premium; and this he in fact did. It further appears that his place of business was New York, from which point he corresponded with Dr. Vedder. Letters sent by him to Dr. Vedder are dated from the office of the company. The envelope of a letter sent by him to Dr. Vedder was marked to be returned to the company, if not called for in ten days. With the blank application sent to Dr. Vedder, was an envelope directed to Corey at New York, describing him as general agent of the Equitable Life Assurance Society. The bill of Dr. Vedder's charge to the defendant for his services in this matter was received by him from Corey.

It appears, therefore, that the blank application came from Corey to Dr. Vedder, and that when Dr. Vedder called upon the insured to make out his application, the doctor had received the blank application ; that he put the questions to Flynn, and wrote down the answers, and that Flynn signed the application in his presence. These are the very questions, all of which 't was

Corey's express duty to see were answered. That Dr. Vedder was a medical examiner of the defendant does not seem to be disputed. He made a report, in that capacity in this case, upon which the defendant issued the policy. This is an adoption of him as medical examiner.

It appears by note to that report that if the medical examiner had not been regularly appointed, a "medical reference" must be signed and accompany the application. No such "medical reference" is in this case. This indicates that he had been regularly appointed.

This medical examiner testifies that he was requested by Corey to go and take or fill the application, and to make the examination. Whether this was true or not, was submitted to the jury, and they have found for the plaintiff. They have found, too, that there was no collusion between Dr. Vedder and the assured.

There is no doubt that certain of the written answers in the application are untrue; and the only question is whether the acts and sayings of Dr. Vedder relieve the plaintiff from the effect of these untrue written answers. The court charged that if there was collusion between the insured and Dr. Vedder, the plaintiff could not recover; that if Dr. Vedder was there as the friend and agent of the assured, the plaintiff could not recover; that if he was there merely as the medical examiner of the defendant, the plaintiff could not recover; that if he was there as the agent of the company for the purpose of receiving and preparing this application, then there might be a recovery. And here it should be noticed that no evidence is given by the company as to the authority granted to Corey or to Dr. Vedder. The fair presumption, then, is that they cannot deny the authority of either.

The form of the examiner's reports states that the examiner will require the applicant to procure the family physician's certificate, unless such certificate is clearly unnecessary. In this respect, then, the examiner acts for the company in deciding whether that certificate is necessary.

The written answers of the applicant, which are alleged to be false, are exclusively as to matters of disease. Dr. Vedder read to him the question, whether he had had any of a number of diseases. The applicant mentioned a sickness he had had "down

below." Dr. Vedder told him it was not serious, and it was not necessary to mention it. Dr. Vedder wrote the answer "whooping-cough, measles; no effects from them." The applicant did not read the answer. Again, Dr. Vedder read the question, whether he had had any serious illness? The applicant told him that a physician had treated him for a slight attack of gravel. Dr. Vedder said the physician was mistaken, and wrote "no." The applicant did not see the answer. Again, Dr. Vedder read the question, whether he had consulted other medical men? The applicant said he had, and mentioned a name. Dr. Vedder explained to him that that consultation was not sufficient to mention, and wrote "no." The applicant saw none of the answers. The medical examination was taken by Dr. Vedder the same day.

The facts, then, are that an agent of the company, doing business in New York, and dating from the company's office, authorized to receive the first premium of this policy, sends a blank application to Dr. Vedder, a medical examiner of the company, requesting him to go and take the application and make the examination. Dr. Vedder goes for that purpose with the blank application, puts the questions, and receives truthful answers. He is himself intrusted with the duty of examining the health of the applicant, and in several instances, where the verbal answers of the applicant relate to the applicant's health, after hearing the verbal answers, Dr. Vedder explains what the proper written answer should be and writes it down, and the applicant does not see any of the answers. The application is returned to the agent and approved by him. The policy is made out by the company and the insured pays the premium. He was induced to sign the incorrect answers by the statements of the defendant's medical examiner on medical subjects, in respect to which it was reasonable to rely on him as the agent, in that respect, of the company.

It is not for us to justify the conduct of the medical examiner. The question is, who shall suffer for the misstatements made by him in writing the answers? Shall the loss fall on the insured, who is found by the jury to have made verbally truthful answers, and who trusted a medical expert of the company's selection, coming to take his application and to examine him? Or shall it fall on the company, that has, by making Corey, its agent, and

Dr. Vedder, its medical examiner, been able to obtain the premium from the deceased, and to cause him to believe that his life was insured ?

The judgment and order should be affirmed, with costs.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment and order affirmed, with costs.