PATRICK FLYNN et al., as Administrators, etc., Respondents, v. THE EQUITABLE LIFE INSURANCE COMPANY, Appellant.

It is no answer to a defense of fraud in an action upon a policy of life insurance, that defendant has not returned the premiums paid; the principle that a party seeking to rescind a contract for fraud must return what he has received has no application to such a case.

C., an agent of defendant, sent to V., its medical examiner, blank applications for life insurance, requesting him to take the examination of F., plaintiffs' intestate; V. was also F.'s medical attendant. F. gave correct answers to the questions in the application. V., who filled out the application, changed the answers so that they were in some respects untrue; F. signed without reading. It appeared that C. held himself out and acted to some extent as general agent, and he appeared to be an occupant of defendant's principal office. By the policy the statements in the application were made warranties. In an action upon the policy, held, that the evidence was sufficient to cast upon the defendant the burden of showing the real relations between it and C., and in the absence of any such proof on its part, to justify a finding that he was authorized to employ V. to take the application in question; and, so, that defendant was chargeable with the acts and omissions of V. in the performance of his duty as agent; and, in the absence of fraud or collusion, that it was estopped from denying the truth of the answers.

*Ins. Co.* v. *Martin* (11 Vroom [N. J.], 569), distinguished.

To a question in an application calling for the name of any medical attendant, and the disease for which his services were required, an answer giving the name of the physician and the disease is sufficient; in the absence of a particular inquiry, it is not necessary to state the mode of treatment adopted by the physician.

(Argued September 15, 1879; decided November 18, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 15 Hun, 521.)

This was an action upon a policy of life insurance issued by defendant upon the life of John H. Flynn, plaintiff's intestate.

It is reported upon a former appeal in 67 N. Y., 500.

By the policy the declarations and statements of the insured in his application were made warranties. The defense was a breach of warranty, in that some of the statements in the application were untrue. The application was filled out by Dr. R. H. Vedder, who was a medical examiner for defendant, and to whom one Corey, one of its agents, had sent the blank application with instructions to take Flynn's application.

The evidence as to the authority of Corey as agent, the manner of filling up the application, and as to the particulars in which the statements in the application are claimed to be untrue, are set forth sufficiently in the opinion.

*Charles B. Alexander*, for appellant. The court erred in submitting the question to the jury as to whether Dr. Vedder acted as the agent of the defendant in taking the application and directing answers. (*Howard* v. *Smith*, 33 Supr. Ct., 124; *Stone* v. *Browning*, 68 N. Y., 598; *Denny* v. *Williams*, 5 Allen, 5; *Howard* v. *Borden*, 13 Allen, 299; *Harris* v. *Wilson*, 1 Wend., 511; *Small* v. *Smith*, 1 Den., 586; *Storey* v. *Brennan*, 15 N. Y., 526.) In his capacity of medical examiner, Vedder had no power to change the contract, to

estop the defendant, or to waive the effects of a fraud. (*Foot* v. *Ætna L. Ins. Co.*, 61 N. Y., 571; *Valton* v. *Nat. Ins. Co.*, 1 Bigelow's Cas., 453, note; *Nat. L. Ins. Co.* v. *Minch*, 53 N. Y., 151; *Vose* v. *Eagle Ins. Co.*, 6 Cush., 42; *Flynn* v. *Equitable Ins. Co.*, 67 N. Y., 500.) Knowledge of the agent of the company of the falsity of the warranty would not relieve the insured or his representatives from the consequence of a breach, nor would the action of the agent in preventing the truth from being told, by writing false answers, bind or estop the company. (*Rohrbach* v. *Germ. Ins. Co.*, 62 N. Y., 47; *Barteau* v. *Phœnix Ins. Co.*, 67 id., 595; *Van Schaick* v. *Ins. Co.*, 68 id., 438; *Ins. Co.* v. *Martin*, 11 Vroom., 569; *Ryan* v. *Ins. Co.*, 41 Conn., 168; *Ins. Co.* v. *Wolff*, 5 Otto, 331; *Lockner* v. *Home Ins. Co.*, 17 Mo., 247.) The nature of Cory's agency was such as to prevent him from delegating any of its trusts. (*Hawley* v. *James*, 5 Paige, 323; *Leyon* v. *Jerome*, 26 Wend., 485; *In re Bleakley*, 5 Paige, 311; *Coles* v. *Trecothick*, 9 Ves., 234; *Stone* v. *The State*, 12 Mo., 400; *Lewis* v. *Ingersoll*, 3 Abb. Ct. App., 55; *Grinnell* v. *Buchanan*, 1 Daly, 538; 2 Kent, 597.) The declarations of an agent do not establish his agency. (*Fairles* v. *Hastings*, 10 Ves., 126; *Streeter* v. *Poor*, 4 Kans., 412; *Mapp* v. *Phillips*, 32 Ga., 72; *Brigham* v. *Peters*, 1 Gray, 139; *Stringham* v. *St. N. Ins. Co.*, Ct. Appeals, 1867; 4 Abb. Ct. App., 315.) Even if Cory was a general agent, the applicant had notice that to him he was a special agent with limited power. (*Munn* v. *Commission Co.*, 15 J. R., 54.) Even if he were a general agent he could not go beyond the apparent scope of his authority. (*Beals* v. *Allen*, 18 J. R., 366; *Rossiter* v. *Rossiter*, 8 Wend., 494; *Scott* v. *McGrath*, 7 Barb., 53.) But if Vedder was held to be an agent of the defendant, the evidence of fraud and conspiracy on his part is so clear that an action against Vedder and the plaintiff would have been sustained to recover back the amount of the policy, had the same been paid by the defendant. (*Nat. L. Ins. Co.* v. *Minch*, 23 N. Y., 144; *Smith* v. *Ins. Co.*, 24 Penn., 320; *Ryan* v. *Home Ins. Co.*, 41 Conn., 168; *Baker*

v. *Home Ins. Co.*, 2 Hun, 402; *Dozier* v. *Freeman*, 47 Miss.,
647.) The exclusion of the petition of one of the plaintiffs,
made under oath, showing that the assured was a lunatic,
was error. (*Hart* v. *Deamer*, 6 Wend., 497; *Griswold* v.
*Miller*, 15 Barb., 520; *L'Amoreux* v. *Crosby*, 2 Paige, 422.)
Unless it appears that Vedder either knew or was told every
fact, the suppression of which would vitiate the policy, the
plaintiff cannot recover. (Bliss on Life Ins. [2d ed.], § 49;
*Smith* v. *Ætna Ins. Co.*, 49 N. Y., 211; *Horn* v. *Am. Ins.
Co.*, 64 Barb., 82; *Valton* v. *Ins. Co.*, 20 N. Y., 32; *Jeffries*
v. *Ins. Co.*, 22 Wall., 47.)

*Robert Payne*, for respondents. The representations and
advice of Dr. Vedder, communicated to the assured at the
time of taking the application, bound defendant. His acts
were within the apparent scope of his authority, and hence
became the acts of defendant. (*Plumb* v. *Catt. Co. Mut.
Ins. Co.*, 18 N. Y., 392; *Rowley* v. *Empire Ins. Co.*, 4 Abb.
Ct. App.; id., 36 N. Y., 550; 3 Keyes, 557; Bliss on L.
Ins. [2d ed.], § 276; id., § 280, § 291, and cases cited; 20
Wall., 560; 51 N. Y., 117; 26 id., 460; 57 Barb., 519; 10
Abb. [N. S.], 166; *Mersereau* v. *P. M. L. Ins. Co.*, 66 N.
Y., 274; *Pierce* v. *Nashua Ins. Co.*, 9 Am. Rep., 235–239;
*Miner* v. *Phœnix Ins. Co.*, id., 479, 482; *Clark* v. *Un. M.
Ins. Co.*, 40 N. H., 333; *Masters* v. *Mad. Co. M. Ins. Co.*,
11 Barb., 624; *Prot. Ins. Co.* v. *Harmer*, 2 Ohio St., 452;
*Beal* v. *Park F. Ins. Co.*, 16 Wis., 241; *Hughes* v. *City F.
Ins. Co.*, 29 Conn., 10; *Kelly* v. *Troy F. Ins. Co.*, 3 Wis.,
268, 269; *How. F. Ins. Co.* v. *Bruner*, 23 Penn. St., 50;
*Ames* v. *N. Y. Un. Ins. Co.*, 14 N. Y., 253; *May* v. *Buck-
eye M. Ins. Co.*, 25 Wis., 291; *Col. Ins. Co.* v. *Cooper*, 50
Penn. St., 331; Bliss on L. Ins., §§ 71, 74; *Rawles* v. *Am.
Mut. L. Ins. Co.*, 36 Barb., 357; affmd., 27 N. Y., 282;
*Fitch* v. *Am. Pop. L. Ins. Co.*, 59 id., 573; *Edington* v.
*Mut. L. Ins. Co.*, 67 id., 185, 197, 198; *Dillebar* v. *Home
L. Ins. Co.*, 69 id., 260, 262.) The defendant was estopped
from showing that the health of the assured was different

from what it had, through its agent, declared in the application. (*Pickard* v. *Sears*, 6 Ad. & Ell., 475; *Plumb* v. *Catt. Co. M. Ins. Co.*, 18 N. Y., 392; *Ames* v. *N. Y. Un. Ins. Co.*, 14 id., 253 ; *Alexander* v. *Ger. F. Ins. Co.*, 5 Sup. Ct. R., 208; *Boos* v. *World M. L. Ins. Co.*, 6 id., 364, 368; affmd., 64 N. Y., 236; *Ins. Co.* v. *Wilkinson*, 13 Wall., 222; *Ins. Co.* v. *Mahone*, 21 id., 152; *Rowley* v. *Empire Ins. Co.*, 36 N. Y., 550; Dunlap's Palcy's Agency, 302; *Bk. U. S.* v. *Davis*, 2 Hill, 451, 462; *Sanford* v. *Handy*, 23 Wend., 260; *N. R. Bk.* v. *Aynear*, 3 Hill, 262.) It was competent to ask Dr. Vedder whether there was any fraud or collusion on his part in respect of the application, and whether he designed his report and action to be honest, etc. (*Seymour* v. *Wilson*, 14 N. Y., 567; *McKown* v. *Hunter*, 30 id., 625, 628; *Foster* v. *Cronkhite*, 35 id., 139, 147.) Even if the statements of the assured were untrue and the defendant has been defrauded, it cannot successfully defend without showing a return or tender of the premiums. (*Voorhees* v. *Earl*, 2 Hill, 293; *Stevens* v. *Hyde*, 32 Barb., 171; *Goeth* v. *White*, 35 id., 76; *Harris* v. *Eq. L. Ass. Socy.*, 64 N. Y., 196, 200; *Sweetman* v. *Prince*, 26 id., 224, 232 ; *Beck* v. *Sheldon*, 48 id., 365, 373; *Du Bois* v. *Hermance*, 56 id., 673, 674; *Allerton* v. *Allerton*, 50 id., 670.)

CHURCH, Ch. J. The principle that a party seeking to rescind a contract for fraud must return what he has received, has no application to this case.

The plaintiffs have brought an action upon a contract entered into between the deceased and the defendant. The defense is that the contract has been violated by the intestate, and hence no action can be maintained upon it. The plaintiffs are seeking to enforce the contract, and performance on the part of their intestate is a condition of a right to recover. The right to a return of the premiums paid, is not necessarily involved in the action. The plaintiffs must establish a cause of action upon the contract, if they fail to do this, they cannot recover, irrespective of the question whether they are

entitled to a return of the premiums or not.    A very material point in the case is whether the evidence was sufficient to justify the submission to the jury of the question whether Dr. Vedder is to be regarded as the agent of the company, to take and receive the application for insurance, and hence that the latter is chargeable with his acts and omissions, in performing that duty.    When the case was here before (67 N. Y., 500) it was held that such agency did not appear; that as medical examiner he had no authority to take the application, or to bind the company by any act in connection with it.    On the last trial it is claimed that additional and sufficient evidence was given to justify the submission of the question to the jury, and to warrant a finding in favor of the plaintiff.    It would have been more satisfactory if the real facts bearing upon the question had been presented, so that the court and jury could have arrived at a reasonably certain conclusion upon it, but both parties seemed disinclined to produce the evidence presumably within their power, and we must grope our way as best we can by such meagre light as the parties have seen fit to furnish.    It is not disputed that Dr. Vedder was the authorized medical examiner of the company, and made the medical examination upon which the policy was issued.    He was never appointed by the company agent to solicit, or receive applications.    The evidence relied upon, to warrant the inference that he had authority to take this application, is that he received the blank application from one Cory, who requested him to take the application. Cory was an agent of the company, but it is disputed that he had power to appoint subagents, or to delegate his own powers.    He is recognized as agent in the policy itself.    One condition is "that this policy shall not be binding until delivered by the society's cashier, or by its agent A. B. Cory," to which is attached a certificate signed A. B. Cory, that he had received the premiums, and delivered the policy. Indorsed upon the policy under the head of "notice to the assured," it is stated that the duties of agents are simply the reception and transmission of policies and premiums under

instructions of the society. From this it might be inferred that the designation of Cory as an agent, implied no more than an ordinary soliciting agent, and as such he would have no power to delegate his authority, and the company would not be bound by any delegation he might make unless they knew of and ratified his acts. Circumstances were shown from which it is claimed that an inference may be drawn that he had more than the power of a common soliciting agent. This consists of some correspondence with Vedder, in which he approves of the manner of filling up the application of Flynn, and requests him in substance to interest himself in taking other applications, and specifies his compensation. Nothing is said expressly about appointing him agent, but the letters may be regarded to some extent as negotiations on Cory's part for his acting as such. In addition to these letters, an envelope is produced, in which was enclosed a letter from Cory to Vedder, on the back of which is printed a direction to the postmaster, to return it to the company if not called for, and an envelope is produced which had been sent by Cory for Dr. Vedder to use, on the back of which in lithograph is the name of Cory, described in printing as the general agent of the company. Dr. Vedder at first testified that he had received payment for taking the application, but upon the production of a receipted bill, it seems that it was only for the medical examination. Upon the first trial some of these circumstances were shown, but not as fully as upon the last, and it did not appear how Dr. Vedder got the application. It is argued that Cory as a simple soliciting agent had no power to delegate his authority and that the additional evidence produced, to show that he was a general agent, are the acts of Cory only, and that he cannot establish either his agency or authority by asserting it, or by his acts unless they are ratified by the principal with knowledge. On the other hand it is insisted that the inference is a legitimate one, either that Cory had sufficient power to authorize Vedder to take this application for the company, or that the company

knew of, and approved his acts in respect to it, and the facts that letters written by him imported to come from the defendant's principal office in New York, and letters were addressed to him at such office, in blank envelopes sent out by him, tend to show that he transacted business in that office, and that his acts in respect to this policy which was issued by the company were known to it, and were approved by it. While this evidence is far from conclusive, and may be regarded as slight, we are inclined to think the conceded fact that he was an agent of the company, with the other circumstances alluded to, were sufficient to cast the burden upon the defendant of showing the real facts, and upon its failure to do so, to justify an inference against it. Cory was not produced, and no reason is shown why not. Presumably it was in the power of the company to produce him, and the company had the power to show precisely what authority Cory possessed, and failing to do this, it cannot complain that adverse presumptions should be indulged. Cory was confessedly an agent; he held himself out and acted to some extent as a general agent, and he appeared to be an occupant of the company's principal office. We think that the onus was fairly cast upon the defendant to show the real truth or take the consequences which the law infers from the omission.

The defense interposed was a breach of warranty by the assured, contained in several answers to the questions propounded to him in the application. These answers are made warranties by the terms of the policy, and are to be regarded as such. Some of the answers were not strictly true, and the presiding judge charged the jury that unless the company was bound by the acts of Dr. Vedder in preparing the answers, the defendant was entitled to a verdict. It seems that the interrogations were read by Dr. Vedder to the assured, and upon receiving the answer of the assured to the respective questions, he wrote the answers to the interrogations in the application himself, and that the assured did not see the answers as written. To the fifteenth interrogatory

inquiring whether the assured had ever had various specified diseases, and among others, disease of the kidneys, bladder, brain, or nervous system, the answer was, " Whooping cough, measles, no effects from," and to the question whether he had any serious illness, the answer was " No." To the twentieth interrogatory, inquiring who his medical attendant was, and for what diseases he had required his services, the answer was " Ransom H. Vedder, Chatham Centre; nothing but debility, and slight bilious difficulty." To the twenty-first interrogatory, " Have you consulted any other medical man ; if so for what, and when ?" the answer was " No." The evidence on the part of the defendant tended to show that these answers were not true, that at some time the assured had been afflicted with a disease of the kidneys or bladder or genital organs ; that he had been treated for gravel by Dr. Van Buren, and had consulted others ; that at one time he had been supposed to be insane, and papers were prepared, among others the affidavit of Dr. Vedder himself to show his insanity with a view of sending him to the asylum. To avoid the effect of this evidence the plaintiffs called Dr. Vedder as a witness who testified in substance, that as to insanity the assured referred him to the occasion when it was supposed he was thus afflicted, and that he told the assured in substance, that they were mistaken in supposing it to be insanity or derangement, that it was only temporary, and as he recovered without any treatment it amounted to nothing and that it was unnecessary to mention it, that the assured told him he had been to New York, and had been treated by Dr. Van Buren for the gravel, and had consulted others, that he the witness informed the assured that it was not gravel, nor anything serious, as he had cured him by a simple prescription, and that it was unnecessary to mention it, that as to the measles the assured told him that he supposed he had them, but was not positive. The witness testified also in substance that these several statements made by him to the assured were true, that he was not insane, and did not have the gravel

or any disease of the kidneys or bladder, or any other serious illness, that he wrote all the answers himself, and that he did not read them to the assured, nor did the latter see them. In short the evidence of this witness tends to show that the assured stated substantially the truth in respect to his physical condition, and the diseases and ailments with which he had been afflicted, and that he wrote the answers as he thought was right, and that it was done in good faith. Dr. Vedder had been the physician of the assured, and his family, for many years, and was then acting in the double capacity of medical examiner and agent for the company to take the application, and it was natural that his advice in respect to medical questions should be taken by the assured, and if he answered the questions truly, in the absence of fraud or collusion, the dictates of justice as well as the established rule in this State absolve the assured from responsibility for any errors or mistakes which the agent of the company may have made in writing down the answers, and that the company is estopped from denying the truth of the answers. The acts of its agent within the scope of his authority are regarded as its acts, and the other party having acted upon them, it cannot deny them. This was substantially charged by the judge, and there was no error in the charge in that respect. Whatever apparent conflict there may have been (and the conflict is more apparent than real) the more recent cases and the great weight of authority have settled the rule here indicated. (*Plumb* v. *Ins. Co.*, 18 N. Y., 392; *Rowley* v. *Ins. Co.*, 36 id., 550; 3 Keyes, 557; Bliss on Life Ins., §§ 280–291, and cases cited. *Mersereau* v. *Ins. Co.*, 66 N. Y., 274; *Pierce* v. *Nashua Ins. Co.*, 9 Am. R., 235; *Miner* v. *Phœnix Ins. Co.*, 9 id., 479, and cases cited ; *Columbia Ins. Co.* v. *Cooper*, 50 Penn. St., 331; *Boos* v. *Ins. Co.*, 64 N. Y., 236; *Baker* v. *Ins. Co.*, 64 id., 648; *Ins. Co.* v. *Wilkinson*, 13 Wal., 222 ; *Ins. Co.* v. *Mahone*, 21 id., 152.) In the language of ALLEN, J., in *Baker* v. *Ins. Co.*, *supra:* "If true answers were given by the applicant to the agent of the defendant, by whom the application was filled out, and the

answers reduced to writing, but the agent for any reason modified or varied the answers, so as to give them a different meaning from the answers actually given by the applicant, the defendant would be estopped from challenging the correctness of the answers as modified and written by the agent." The general current of authority is to the same effect.

I am aware that there are respectable authorities holding a contrary doctrine, and notably *Ins. Co.* v. *Martin* (11 Vroom [N. J.], 569); but the learned court criticises not so much the principle as the rule allowing such evidence in a court of law. The court holds that the contract should first be reformed in a court of equity, and then an action at law brought upon it.

There would be difficulty in reforming a contract, the terms of which were prescribed by the defendant himself, but if reformation was practicable, and the answers were written truly the defendant would not be benefited because it would then be unable to prove a breach of the warranty. The only difference is that in one case the result is reached by one law suit, and in the other, two are required. Many of the distinctions between courts of law and equity as to the admission of evidence have necessarily become obliterated when these jurisdictions are blended, and are exercised by the same tribunal. In principle, written instruments can have no greater sanctity in courts of law than in courts of equity, and when authority exists for administering justice in either court there is no sound reason why the evidence for that purpose should not be received in either court. Nor is any reason perceived why the principle of an *estoppel in pais*, should not be applied. An insurance company in receiving answers to the numerous interrogatories put to the assured, covering every conceivable phase of every human disease, are presumed to understand the subject better than the assured, and if truthful answers are given, and if the answers are then written by it, according to its own construction, and omissions or mistakes are made by it, or under its advice, it, and not the assured ought to bear the conse-

quences. By this means they have induced the assured to enter into the contract, and part with his money to pay premiums, and it is too late when the company is called upon to perform the contract on its part, to set up its own acts, mistakes, or blunders as a defense, and it is estopped from showing that the answers are not true.

A point is made that the facts were not fully stated to Dr. Vedder. The assured stated that he had consulted others besides Dr. Van Buren. This was sufficient to put the agent or the company upon inquiry, and if he or it desired further specification it should have been called for. One physician, Dr. Masten, was called, and testified that he once made a simple prescription for the assured for a cold, and the others may have been equally unimportant. At all events with such an answer it cannot be affirmed that there was any such suppression as avoids the policy. It is also objected that the assured did not state that Dr. Van Buren had operated upon him by the use of a catheter, or other instrument, as the declarations of the assured proved, tended to show was the fact. The assured stated that he was treated by Dr. Van Buren for gravel. It was not necessary to state the particular treatment practiced. If the company desired to know, the agent should have pursued the inquiry. Dr. Van Buren was not called, and it seems that the assured did not in fact have the gravel. We think that the answers given by the assured as testified to by Dr. Vedder were substantially true. Nor is it a question of law whether Dr. Vedder should be believed. That question was submitted to the jury, and the jury were charged that if there was any collusion or fraud between Dr. Vedder and the assured, or if they discredited Dr. Vedder, they must find for the defendant. It may be fairly said that Dr. Vedder did not discharge the duty devolved upon him with that carefulness and accuracy which should be observed by an agent in taking these applications, but the evidence would not justify any court in holding as matter of law that there was bad faith on his part, and still less on the part of the assured. From the declara-

tions of the assured proved, and some other circumstances, it is quite probable that the assured had at one time some disease or ailment of the urinary and genital organs, of, what might fairly be called, a serious nature, but it does not appear what the nature of it was, or its character or extent, and it does not appear that this difficulty had anything to do with his death. According to the evidence of Dr. Vedder, measles was the primary cause of death, it being followed by a cough and fever. On the whole, while the case is not entirely free from suspicion, it cannot be said that it is proved not to have substantial merits.

These views cover all the exceptions relating to the substantial merits of the case. We find no error in the charge, or refusals to charge by the judge. They are in harmony with the views above expressed. I have examined the other exceptions, and do not think any of them tenable.

The judgment should be affirmed.

All concur, except Earl, J., dissenting.

Judgment affirmed.