WILLIAM H. BENTLEY, Appellant, *against* THE OWEGO MUTUAL BENEFIT ASSOCIATION, Respondent.

*N. Y. Supreme Court, Fourth Department, General Term, May* 12, 1889.

1. *Insurance. Estoppel.*—Where the application for insurance is drawn by the agent of the insurer, and the answers to the interrogatories, contained therein, are inserted by him at his own suggestion, without fraud or collusion on the part of the assured, the insurer is estopped from controverting the truth of such statements, or the interpretation which it has given to the answers actually made by the applicant, in an action upon the instrument between the parties thereto.
2. *Nonsuit.*—In order to justify a nonsuit, where the plaintiff makes out his case by the introduction in evidence of the instrument sued on, the existence of the defense relied on must be conclusively established: otherwise, it is a question of fact for the jury.

Action on a life insurance policy. Judgment was entered upon an order nonsuiting plaintiff, from which he appeals.

*Frederick Collin*, for appellant.

*Charles A. Clark*, for respondent.

MARTIN, J.—If the appellant was improperly nonsuited the judgment herein should be reversed. Therefore, the important question in this case is not whether the court committed some error in the admission or rejection of evidence, but whether it erred in granting the defendant's motion for a nonsuit.

This action was upon a $5,000 certificate of membership in the defendant's company, which was in the nature of a life insurance policy. It was issued by the defendant upon the life of Lucinda Dillmore. The defendant thereby

12

agreed, upon satisfactory proof of her death, to make one assessment on each surviving member in the division to which she belonged, based upon the aggregate amount for which she was insured, and pay the amount actually collected by such assessment to the plaintiff, at its office at Owego, N. Y., within ninety days after filing the proofs required by the defendant.

The defense interposed was, that some of the statements, answers and warranties set forth in the written application of Mrs. Dillmore, upon which the certificate was issued, were false, untrue and fraudulent, and hence, that the policy certificate became void, and the defendant was released and discharged from paying the amount named, or from making such assessment.

If the statements or answers contained in the application were false or untrue, and the defendant is not estopped from availing itself of that fact, then it seems to be admitted that the certificate was invalid, and the plaintiff was properly nonsuited.

The application contained, among others, the following questions and answers: "7. Are you in good health? Yes. Are you usually in good health? Yes. 13. Have you ever had apoplexy or paralysis? No. 14 (a) Have you ever had any malformation, illness or injury, or undergone any surgical operation? If so, state its nature, character and results. A. No. 17. Have you any chronic disease, or is there anything, to your knowledge, in your physical condition, or personal history or habits, tending to shorten your life, which is not distinctly set forth above? None."

The defendant claims that the foregoing answers and statements were false and untrue, because Mrs. Dillmore had a running sore upon her leg, so that it had wasted away, and she could neither stand nor walk; had diarrhœa, or cholera morbus, and had had it for years so severely as to produce sinking spells or unconsciousness; and had in-

continency of her urine caused by paralysis. If it be true, that she was afflicted with these diseases, as claimed, then it is quite manifest that the statements and answers in the application above set forth were untrue.

The undisputed evidence is to the effect that the disease of her limb and the attacks of cholera morbus or diarrhœa existed as claimed by the defendant. But the plaintiff claims that Mr. Jackson, who acted as the defendant's agent, was fully apprised of her condition in those respects, and that notwithstanding such knowledge he drew the application himself and wrote the statements and answers above set forth; and hence, that the defendant is estopped from controverting the truth of such statements, so far as those diseases are concerned.

In discussing this question we must assume that Jackson represented the defendant and was its agent at the time, as there was sufficient proof at least to make that a question for the jury. Mowry v. Rosendale, 74 N. Y. 360 .

"In the case of life insurance policies it is the settled doctrine of the modern cases, that where the application for insurance is drawn up by the agent of the insurer, and the answers to the interrogations contained therein are inserted by him at his own suggestion, without fraud or collusion on the part of the assured, the insurer is estopped from controverting the truth of such statements, or the interpretation which it has given to the answers actually made by the applicant, in an action upon the instrument between the parties thereto." Such was the language employed by RUGER, Ch. J., in delivering the opinion in Miller v. Phœnix Mutual Ins. Co. (107 N. Y. 296; 12 N. Y. State Rep. 1), and the doctrine stated seems to be well established by the authorities in this state. Plumb v. Cattaraugus County Mutual Ins. Co., 18 N. Y. 392; Rowley v. Empire Ins. Co., 36 id. 550; Baker v. Home L. Ins. Co., 64 id. 648; Maher v. Hibernia Ins. Co., 67 id. 283; Flynn v. Equitable L. Ins. Co., 78 id. 568; Grattan v. Metropolitan

L. Ins. Co. of Watertown, 80 id. 292, 294; Bennett *v.* Agricultural Ins. Co., 106 id. 243; 8 N. Y. State Rep. 693.

Applying the principle of these cases to the question before us, and it follows that the defendant was estopped from questioning the correctness of the application, so far as its correctness is sought to be impeached by proof of the condition of Mrs. Dillmore in respect to the disease of her leg, or in respect to her having had cholera morbus or diarrhœa; at least, the evidence was such that the court could not properly hold as a matter of law that the defendant was not thus estopped. We do not think that the nonsuit can be upheld, upon the ground of the untruthfulness of the application in those particulars.

We, however, find no evidence which tends to show that the defendant's agent had any knowledge or was in any way informed as to the incontinency of her urine, or the disease which caused it, and, therefore, the defendant is not estopped from questioning the correctness of the application in that respect. If the existence of that disease was conclusively established, then it would seem that the plaintiff was properly nonsuited, and the judgment should be sustained, unless the court improperly rejected evidence offered by the defendant to show such knowledge.

But the plaintiff contends that the fact that she had this disease was not conclusively established; that while the defendant gave evidence which tended to establish that fact, still that such evidence was contradicted by the evidence of the plaintiff, which was to the effect that she was free from such disease until after the policy in question was obtained. The claim of the plaintiff in this respect seems to be sustained by the evidence. Mrs. Babcock, who was the daughter of Mrs. Dillmore, testified that she lived with her mother for the last eight years of her life; "that after July of the year she died, urine passed from her unconsciously. It had never been true, to my knowledge, that

she was suffering from inability to control her urine, prior to that time. I had never known of it. I did the washing in the house, and of the sheets and bedding, and if any-thing of that kind had occurred I would have known it. I guess I could not have helped to know it." The husband of this witness also testified: "I lived right there in the house. I did not know anything about her being unable to control her urine until the fall of 1886." We do not think, with this evidence in the case, the court could properly hold that Mrs. Dillmore was suffering from this disease at the time when the policy was issued, but are of opinion that it was a question of fact for the jury, and hence did not justify the court in basing a nonsuit thereon.

These considerations have led us to the conclusion that the court erred in nonsuiting the plaintiff, and that for such error the judgment should be reversed.

Judgment reversed on the exceptions, and a new trial granted, with costs to abide the event.

HARDIN, P. J., and MERWIN, J., concur.