FRANK DE GUZZI *vs.* PRUDENTIAL INSURANCE COMPANY
OF AMERICA.

Berkshire.  September 19, 1922. — October 10, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Insurance,* Life.

In declarations in answers to questions in an application for a policy of life insurance, which the applicant agreed should become a part of the policy applied for, he stated in answer to the question, "When last sick?" "Not lately," and in answer to the question, "What physicians have attended you within the past three years?" "None." He had consulted physicians within five days of the application. The policy provided that it should not take effect "until the same shall be issued and delivered by the said company, and the first premium paid thereon in full while" the applicant's health, habits and occupation were the same as described in the application. The applicant died of diabetes a month after the policy was issued. At the trial of an action by the beneficiary under the policy, the judge charged the jury that the answers of the applicant that he had consulted no physicians within three years of the application did not materially affect the risk; but that, in order to recover, the plaintiff must show that the applicant "acted without an intention to deceive and that he did not have diabetes at the time that the policy was issued." The jury found for the plaintiff. *Held,* that

(1) Under G. L. c. 175, § 186, it was not improper for the judge to refuse to rule that the consulting of a physician within the period of three years was a material fact, or that the statement of the insured that he had not consulted a physician within that time was a material misrepresentation and vitiated the policy;

(2) The following further instructions by the judge on the matter of misrepresentations by the applicant were not erroneous: "you have got to take into account his condition, his ability to speak the language, the circumstances surrounding him, and say whether or not you say, applying your common sense, that he was intending to deceive the company when he made those answers, or was n't he. If he was intending to deceive, then there can be no recovery on this policy. If he was not, then so far as that element of the case is concerned, he can. If the statements were made in good faith, although false, then he would n't be precluded, or his estate, or the present plaintiff would n't be precluded from recovering upon that policy, and you are to consider that element of the case."

At the trial of the action above described, it further appeared that the applicant had answered "Watchman" to the question, "What is your present occupation?", had given his business address as North Adams, and had named a certain firm as his employer. There was evidence that, as his regular work and as means of livelihood, he had worked as a night watchman for the firm he had named "off occasionally and back the rest of the time" for about a year before December 22, 1919; and there was other evidence from which it could be found that he con-

tinued to work in the same employment until as late as January 10, 1920; that his application was made on January 7; that he had worked on a like job for the same employer four or five years before. *Held,* that the evidence warranted a finding that, while engaged in such last employment, he had not finally given up or been discharged from his customary employment as a night watchman; and, if that were found to be the fact, that his occupation would continue to remain that of a night watchman even though he should temporarily cease to perform the duties of that position and engage in other forms of employment; and that a finding of the truth of the answers was warranted.

At the trial above described, it further appeared that the insured died of "pneumonia and diabetes;" and there was conflicting evidence upon which it could have been found that this disease could develop in the period between the time when the policy was issued and the date of the death, and that at the date of the application the insured was in good health and not suffering from diabetes. *Held,* that a finding of the truth of the statements by the insured as to his health was warranted.

CONTRACT upon a policy of insurance issued by the defendant upon the life of Pasquale Lo Scerbo and payable to the plaintiff as beneficiary. Writ dated July 9, 1920.

In the Superior Court, the action was tried before *Wait,* J. It appeared that the plaintiff had consulted physicians within five days of the application for insurance. Other material evidence is described in the opinion.

In his charge, the judge instructed the jury in part as follows:

"If this man did have diabetes, that did increase the risk, and a misrepresentation with regard to it would be a misrepresentation which would relate to a matter in regard to the risk, and so the party would not be saved by that provision of the statutes. . . . That is to say, the plaintiff in order to recover must satisfy you that he acted without an intention to deceive and that he did n't have diabetes at the time that the policy was issued. If you are satisfied that he did intend to deceive, he cannot recover. If you are satisfied that diabetes existed at the time of his examination and of the delivery of the policy, then he cannot recover. But if you are satisfied that the statements made, although false, were not made with intent to deceive and that he did n't have diabetes at the time that the policy was actually issued, then you would find for the plaintiff."

"I think I will have to instruct you that certain things, even if they were misrepresentations, do not affect the risk of loss. That is to say, for instance, he was asked when he was last sick, and he said, 'Not lately.' He was asked whether he had had certain

diseases that are set out in the Interrogatory 15, and he said he had n't had them, and then he was asked 'What physicians have attended you within the past three years, on what date, and for what complaint?' And although he had been to doctors, it's admitted on the evidence, within five days, he said, 'None.' Now I have got to instruct you that that did n't materially affect the risk. The actual risk which the Company was under was n't any greater whether he had been to a physician or not, but here is a point that would be material. If he actually had diabetes at the time, that would affect the risk, and if he, believing that he had it, or knowing that he had it, said that he did n't, then there would be a misrepresentation which would go to the substance of the risk, because I must instruct you as matter of law that if a man has diabetes it does increase the risk of insuring him. That is not a question of fact for the jury. That is a question that the courts have determined. . . ."

Other rulings of the trial judge and exceptions saved by the defendant are described in the opinion. There was a verdict for the plaintiff in the sum of $538.92; and the defendant alleged exceptions.

The case was submitted on briefs.

*F. H. Cande & F. M. Myers*, for the defendant.

*J. H. Mack & W. F. Barrington*, for the plaintiff.

PIERCE, J. This is an action of contract upon a policy of insurance issued by the defendant on the life of one Pasquale Lo Scerbo, "payable to the executors, administrators or assigns of the insured." The issuance and delivery of the policy, the receipt, and the sufficiency of proof of death and appointment of the beneficiary were admitted. The defendant's bill of exceptions sets forth all the material evidence.

At the close of the evidence, the defendant requested the court to make the following rulings:

"1. That upon all the evidence in this case, the plaintiff is not entitled to recover."

"4. The consulting of a physician within the period of three years was a material fact, and the statement of the insured that he had not consulted a physician within that time was a material misrepresentation and vitiates the policy.

"5. If you find that Lo Scerbo made untrue answers to Dr.

McGrath or in his application in material matters necessarily knowing that they were untrue when he made them, the intention to deceive the insurer is implied as a material consequence of such act."

"11. There is no evidence that the occupation of Lo Scerbo was that of night watchman at the Arnold Print Works at the date of said application and the truth of this statement is a condition precedent to the company's liability and you must therefore find a verdict for the defendant."

The defendant also filed a written motion for a directed verdict at the close of the evidence. The motion was denied by the court, and the rulings requested were refused except as covered by the charge. To the denial of the motion for a directed verdict and to the refusal of the court to give the rulings requested the defendant duly excepted.

The jury returned a verdict for the plaintiff in the full amount of the policy.

The contract of insurance contained the provision that "This Policy together with the Application, a copy of which is attached hereto, contains and constitutes the entire contract between the parties hereto, and all statements made by the Insured shall in the absence of fraud be deemed representations and not warranties." The application signed by the insured contained the following provision: "I hereby declare that all the statements and answers to the above questions are complete and true, and I agree that the foregoing, together with this declaration, shall constitute the application and become a part of the contract of insurance hereby applied for, and it is further agreed that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained, and said policy shall not take effect until the same shall be issued and delivered by the said Company, and the first premium paid thereon in full, while my health, habits and occupation are the same as described in this application." R. L. c. 118, § 21, and St. 1907, c. 576, § 21, in force when the policy issued (see now G. L. c. 175, § 186) read: "No oral or written misrepresentation or warranty made in the negotiation of a . . . policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made

with actual intent to deceive or unless the matter misrepresented or made a warranty increased the risk of loss." The defendant contends that the statements of the insured in his application as to his health and occupation were not true in fact, were not true when the policy issued and the first premium was paid, and were misrepresentations which increased the risk of loss.

The application for the policy was made January 7, 1920, and the policy issued January 15, 1920. The insured sailed for Italy on a steamer leaving New York on February 7, 1920, and died on board that ship on February 16, 1920, of "Pneumonia and Diabetes." In his application for insurance he answered question "2. What is your present occupation or occupations? Watchman." He answered question "13. Business Address — (Please print.) No. Street City or Town No. Adams State Mass Name of firm or employer Arnold Print Works Nature of business Print Work." He answered question "8a. What is your present condition of health? good;" "8b. When last sick? Month. Year. not lately"; and question "16. What physicians have attended you within the past three years? On what date and for what complaints? none."

The presiding judge instructed the jury in respect to the answer of the applicant that he was a "watchman"; that "The truth of his being a night watchman at the time is essential to his right to recover. That both the application attached to the policy and the policy itself constitute the contract between the parties." He further instructed the jury that the answer of the applicant as to his "present condition of health" if not true "would be a misrepresentation which would go to the substance of the risk;" and said "because I must instruct you as matter of law that if a man has diabetes it does increase the risk of insuring him." As regards the answers of the applicant as to when he was "last sick" and "What physicians . . . [had] attended . . . [him] within the past three years," the judge instructed the jury as follows: "Now you have got to take into account his condition, his ability to speak the language, the circumstances surrounding him, and say whether or not you say, applying your common sense, that he was intending to deceive the company when he made those answers, or was n't he? If he was intending to deceive, then there can be no recovery on this policy. If he was not, then so far as that element of the

case is concerned, he can. If the statements were made in good faith, although false, then he would n't be precluded, or his estate, or the present plaintiff would n't be precluded from recovering upon that policy, and you are to consider that element of the case." These instructions and directions stated the law and the duty of the jury upon the facts disclosed concisely and accurately. *Levie* v. *Metropolitan Life Ins. Co.* 163 Mass. 117. *Rainger* v. *Boston Mutual Life Association,* 167 Mass. 109. *Brown* v. *Greenfield Life Association,* 172 Mass. 498. *Dolan* v. *Mutual Reserve Fund Life Association,* 173 Mass. 197.

As to the statements of the insured, concerning his occupation and health, going to the substance of the risk, the question remains whether as matter of law there was any substantial evidence to submit to the jury in support of the truth of the answers of the insured in these regards when made, and of the continuance and persistence of the same facts until and when the first premium was paid in full and the policy issued. As to the occupation of the insured there was evidence that he, as regular work and as a means of livelihood, had worked as a night watchman for the Arnold Print Works, "off occasionally and back the rest of the time" for about a year before December 22, 1919; and there was other evidence from which it could be found that he continued to work in the same employment until as late as January 10, 1920. In confirmation of his statement that his occupation was that of a night watchman when he made the answers contained in his application and when the policy issued, there was the further evidence for the jury that the insured had worked for the Arnold Print Works on a like job four or five years ago. As to the claim of the defendant that the occupation of the insured was that of a laborer and that he had given up his occupation as night watchman, it is plain his occupation would continue to remain that of a night watchman even though he should temporarily cease to perform the duties of that position and engage in other forms of employment, if the evidence warranted a finding, as we think it did, that while engaged in such last employment he had not finally given up or been discharged from his customary employment as a night watchman. As to the health of the insured, the jury could have warrantably found upon the testimony of the plaintiff the fact of the death of the insured; and upon the testimony of a

physician who examined the insured before his application that at the time of the examination he was not in good health, in that he had diabetes mellitus, a disease which affects the general health and probability of life; but there was testimony of other physicians, who examined the insured before and after his application, which warranted the jury in finding that he was in good health and did not have diabetes when the application was made and the policy issued. There was further testimony that the disease diabetes, and "Pneumonia and Diabetes," from which the deceased died, could develop after the issuance of the policy and before the time of his death.

The jury were fully instructed, without exceptions taken by the defendant, upon the question whether certain misrepresentations other than such as related to health and occupation would avoid the policy.

It follows from what has been said that neither the motion nor the request for a directed verdict for the defendant could have been given.

*Exceptions overruled.*