ANNA CORBIN, Respondent, *v.* THE COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION OF AMERICA, Appellant.

Third Department, May 6, 1932.

*Moses, Nehrbas & Tyler* [*Henry C. Moses* of counsel], for the appellant.

*A. Earl Baumgarten* [*Frank W. Brooks* of counsel], for the respondent.

HILL, J. This action to recover death benefits guaranteed in an accident insurance policy is brought by the widow of the insured, Robert B. Corbin, deceased, against the defendant company which issued the policy. The defense is that the policy is void because of change of occupation. The jury has determined, in so far as it is a question of fact, that there was no change. The death occurred on July 24, 1931, as the result of an injury received on July 22, 1931, when a motor truck which deceased was driving came in collision with a tree. At that time he was selling and delivering bread for a bakery. The policy was issued in 1922. Deceased stated in the application that he was in the employ of a wholesale dress company as manager engaged in " general work." The policy provided that a change of occupation voided the insurance, unless a consent to continue it after the change, signed by the president of the company, was indorsed thereon; and the deceased, in answer to one of the questions in the application, stated that he understood defendant would not be liable if there was a change of occupation unless such consent had been indorsed. Defendant in 1924 approved a change of occupation to a business designated as " poultry." Deceased continued in this business up to the time of his death, doing some outside work as later detailed, during hours that could be spared. He started with 400 or 500 fowls, increasing the number to about 1,000. His outside work from November, 1929, to June, 1930, was for an industrial insurance company collecting small weekly premiums; and at the same time soliciting and obtaining new insurance, for which he was paid a commission. In this work he would be gone from his residence

and poultry business from ten or eleven o'clock in the forenoon until about four in the afternoon. Thereafter he did "casual" soliciting for another insurance company. About the middle of May, 1931, he took employment with a bakery, driving a truck out from Kingston into the neighboring country, starting from the plant at about two o'clock in the morning and returning at eight or nine in the morning. He expected to continue until Labor Day. He received a commission on the sales he made. He was killed on one of the journeys.

The policy covered accidental death. It was not limited to accidents arising in the course of employment in the occupation named in the application. Defendant determined from the statements in the application, including that as to occupation, whether a policy should be issued. It required information as to a proposed change of occupation to determine if the policy should be continued. If there was a material departure from the terms of the contract, including an unapproved change in the occupation of the insured, plaintiff may not recover. It has been said that "If a man for want of employment steps aside for a season from his regular and usual calling, he does not lose his connection with or give up his craft; as in this case, he did not cease to be a maker of sodawater because, for the time being, he sold it in the streets. Neither is inconsistent with the other, but both are functions of the same calling." (*Grattan* v. *Metropolitan Life Insurance Co.*, 80 N. Y. 281, 291.) When the insured ceased his employment with the dress company and left the city of New York to reside in the country and engage in the poultry business, this he recognized to be a change of occupation and procured an indorsement continuing the policy after the change. He did not cease to engage in the latter occupation but rather increased his stock of poultry. He stepped aside only during his idle hours. He used a motor truck in connection with the poultry business, which gave rise to the same hazard as when he used it in the delivery of bread in the bakery business. There is no direct or implied provision in the policy against the use of such a vehicle. Thus the outside work involved no additional hazard. There was no deceit, willful concealment or intentional violation of the contract. The nature of the work performed by the insured was of the essence of the contract only if the hazard was increased. The care of poultry continued to be the principal business in which insured was engaged. (*Pulaski* v. *Sovereign Camp of Woodmen of the World*, 105 Misc. 740; affd., 187 App. Div. 920.) It cannot be determined as matter of law that there was a change of occupation. (*DeGuzzi* v. *Prudential Ins. Co.*, 242 Mass. 538; *Thorne* v. *Ætna Life Ins. Co.*, 155 Minn. 271;

*Interstate Business Men's Acc. Assn.* v. *Lester*, 257 Fed. 225.) The facts sustain the finding made by the jury. (*Stone's Admrs.* v. *U. S. Casualty Co.*, 34 N. J. L. 371.)

The judgment and order should be affirmed, with costs.

All concur, except HINMAN, J., who dissents and votes for reversal and for dismissal of the complaint on the ground that even though the insured continued to be regularly engaged in the poultry business he was also regularly engaged in a business not set forth in the application for insurance, and not expressly consented to by the insurance company, and that he sustained his accidental death while regularly engaged in such other occupation.

Judgment and order affirmed, with costs.