MARY A. SULLIVAN vs. BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.    March 13, 1916. — June 20, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Witness*, Cross-examination. *Evidence*, Conflicting and correcting statements.

Where, in an action against a corporation operating a street railway for personal
injuries sustained when the plaintiff was a passenger on a car of the defend-
ant, the plaintiff on her direct examination describes the manner in which she
was injured, and in her cross-examination there are read to ,the witness her own
answers to interrogatories, which give a different account of the way the acci-
dent happened, and she then testifies that her answers to the interrogatories
give a correct and absolutely true description of the happening of the accident,
notwithstanding anything that she has testified to on the witness stand, this
is not to be treated as a mere instance of conflicting or inconsistent statements
made upon cross-examination, and the plaintiff is to be bound by the state-
ment last given as the truth.

Where an electric street railway car suddenly moves backward for a considerable
distance just as passengers have entered it and then without a substantial in-
terval of time moves forward, and where both motions are of such violence as
to throw a passenger each time against some part of the car, this is so contrary
to common experience in the ordinary operation of street railway cars as to
warrant an inference of negligence in the operation of the car.

TORT for personal injuries sustained on October 9, 1913, when
the plaintiff was a passenger on a semi-convertible street railway
car of the defendant at about a quarter before nine o'clock in the
evening on Cambridge Street in Cambridge between Sixth Street
and Seventh Street.    Writ dated November 14, 1913.

In the Superior Court the case was tried before *Dana, J.*    At
the close of the plaintiff's evidence, which is described in the
opinion, the judge ordered a verdict for the defendant; and the
plaintiff alleged exceptions.

*H. A. Wilson, F. Juggins & T. F. Murphy*, for the plaintiff, sub-
mitted a brief.

*F. J. Carney*, for the defendant.

RUGG, C. J.    This is an action of tort to recover for personal
injuries received by the plaintiff while a passenger on one of the
defendant's prepayment cars.    On direct examination, she testi-

fied that, as she was about to deposit her fare, after getting within the body of the car, it backed and then started forward; "then I got a grip . . . on the bar . . . and the car took a sudden lurch forward again and broke my grip on the bar and threw me . . . ." This testimony, singularly similar in crucial words to those used by this court in *Lacour* v. *Springfield Street Railway*, 200 Mass. 34, would have been enough to require a submission of the case to the jury. But on cross-examination this occurred: "Q. Well, here are the answers that are filed and you swore to them. 'The car came to a stop at the white post between Sixth and Seventh streets, and other people beside myself got on the car, some people got on ahead of me, and one or two got on behind me; I got into the car, and while I was standing in front of the money box and about to put my fare into the box the car gave a sudden jerk and backed up and threw me against the money box injurying my right arm. Then after the car had backed up about twice the width of the door it started with a sudden jerk again and went forward, and threw me against the wheel in the back of the car, and that worked the injury to my left hip and my head.' A. Yes. Q. Now that is a correct description of how your accident happened is it? A. Yes, sir; Q. And it is absolutely true? A. Yes, sir. Q. And notwithstanding anything which you testified to on the stand, you now say that what I have just read to you is an exact description of how your accident happened? A. Pretty near I guess. Q. It is true isn't it that that answer that you made in Mr. Murphy's office and which I have just read to you is absolutely true isn't it? A. Yes, sir, to the best of my knowledge."

Here is not an instance of more or less conflicting or inconsistent statements made in the course of an examination, where it is for the jury to say what the truth is, as in *Larson* v. *Boston Elevated Railway*, 212 Mass. 262, 268, and cases there collected and numerous similar cases. That is the general rule. A skillful cross-examiner, by pushing a witness to extremes and imposing upon a dull or wearied intellect, ought not to be permitted to secure an undue advantage. But there are occasions where a witness, having made two materially different statements touching the same event, finally adheres definitely to one in preference to the other as being the truth. Under such circumstances the witness is bound by the statement at last given as the truth. This case belongs to that

class. *Tupper* v. *Boston Elevated Railway,* 204 Mass. 151. *Ebert* v. *Haskell,* 217 Mass. 209, 212.

Even if that statement be taken as the utmost limit of evidence bearing on the negligence of the defendant's servants in charge and control of the car, there was still enough to make that question one of fact. There was other evidence that the plaintiff was thrown with force against the money box of the car as it backed and that "it seemed only a second when it lurched forward again." It has been decided in numerous cases that the ordinary lurches and jerks of a car, unaccompanied by evidence conveying a definite impression of specific physical facts, even though described with violent epithets, do not indicate negligence of those operating the car. See *Work* v. *Boston Elevated Railway,* 207 Mass. 447; *Martin* v. *Boston Elevated Railway,* 216 Mass. 361; *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332; *Anderson* v. *Boston Elevated Railway,* 220 Mass. 28. That proposition is too well established to be open to discussion.

But it is not the ordinary course of operation for an electric car to go suddenly backward for a considerable distance just as passengers have entered it, and then without a substantial interval of time to go forward with such violence of action as to throw a passenger with each of these two motions against parts of the car. This diversity of opposite impetus of such force as to throw the ordinary passenger off his balance is so far contrary to common experience as to warrant an inference of negligence in management of the car.

*Exceptions sustained.*