MARY R. SCHILLER *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Suffolk. November 4, 1935. — July 11, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Insurance,* Life: attachment of correct copy of application to policy, examining physician, warranties. *Evidence,* Presumptions and burden of proof, Competency. *Agency,* Scope of authority. *Practice, Civil,* Stipulation, Question of law or fact.

Conduct of the examining physician for a life insurance company in altering answers of an applicant for insurance to questions in the application after the application had been signed by the applicant, was not within the scope of the employment of the physician and was not binding upon the company.

There being no evidence, at the trial of an action upon a policy of life insurance, that the defendant knew or had reason to know that its examining physician, without authority from it or the insured, had altered answers of the insured to certain questions in his application before it was filed with the defendant and the policy issued, the attachment to the policy of a photostatic copy of the application with the altered answers was a compliance with G. L. (Ter. Ed.) c. 175, § 131; and such photostatic copy properly was admitted in evidence with the policy.

Upon evidence, at the trial of an action upon a policy of life insurance, that statements by the insured, in his application for insurance, that he had not suffered from any heart disease, were false because at the time of making the application he was suffering from coronary infarct, angina pectoris, sclerosis of the coronary artery and coronary occlusion, the issue, upon which the defendant had the burden of proof, whether such misrepresentation increased the risk of loss within G. L. (Ter. Ed.) c. 175, § 186, should have been submitted to the jury as a question of fact.

After a verdict for the defendant, an action was reported to this court with a stipulation by the parties that, if rulings and instructions by the trial judge were correct, judgment was to be entered for the plaintiff for a certain sum but that, if they were erroneous, judgment was to be entered for the plaintiff in a larger sum; but, it appearing that certain of the trial judge's rulings determinative of one issue of law were correct, while certain others, determinative of another issue, were erroneous, this court ordered the stipulation vacated and that the action stand for a new trial.

CONTRACT. Writ in the Superior Court dated July 8, 1930.

The action was tried before *Bishop*, J.  From the charge to the jury, but not elsewhere in the evidence set out in the record, it appeared that the insured in his application had answered "No" to the following questions: "Have you ever suffered from any ailment or disease (b) of heart or lungs? . . . (g) Have ·you consulted a physician for any ailment or disease not included in your above answers?"

At the close of the evidence, the plaintiff requested the following rulings, among others: "2. The instrument which purports to be a copy of the application for said policy is not a correct copy of the application made for such policy of insurance by said Louis Schiller." "4. There is no evidence which sustains the burden of proof that such instrument is a correct copy of the application for insurance made by the applicant." "8. The result in law from the making of the alterations above described in the absence of the insured and without his authorization prevents the application from becoming a part of the policy and also prevents the same being received in evidence." "10. It necessarily follows that the defendant cannot be allowed to put in any evidence tending to show, and the jury cannot consider whether the insured made false statements in his application including those made by him to the medical examiner." The requests were refused subject to exception by the plaintiff.

The judge in his charge, subject to exception by the plaintiff, gave the following instructions: "I have ruled as matter of law that as to this policy which is in evidence, the application attached thereto is a correct copy of the application as made by Mr. Schiller; and I also rule that the burden of proof with respect to the correctness of the copy attached to the policy has been sustained by the defendant. . . . I also charge you that you may find that coronary infarct and coronary occlusion are diseases of the heart, and of such seriousness the existence of which increased the risk of loss as matter of law.  If the insured, Louis Schiller, was suffering from heart disease and had received treatment therefor at any time within five years before the date of his application and had misrepresented such disease or treatment, his

widow, the beneficiary named, cannot recover, whether Mr. Schiller knew he had such disease or not."

There was a verdict for the defendant. After the death of *Bishop*, J., the action was reported to this court by *Leary*, J., with the stipulation described in the opinion.

*W. P. Murray*, for the plaintiff.

*W. P. Kelley*, for the defendant.

RUGG, C.J. This is an action of contract. There are two counts in the plaintiff's declaration. Recovery is sought in the first count for the amount of an insurance policy due to the beneficiary and in the second count, in the alternative, for the amount of the premiums paid upon that policy. After verdict, by agreement of the parties the case was reported to this court upon the stipulation that, if the rulings and instructions of the trial judge were correct, judgment is to be entered for the plaintiff for the amount of the premiums; and, if erroneous, judgment is to be entered for the plaintiff for the full value of the policy.

Underlying facts are that an insurance policy in the amount of $10,000 was issued by the defendant upon the life of the plaintiff's husband on September 5, 1928, payable to her as beneficiary, that the insured died on October 27, 1928, and that there has been compliance with all requirements as to proof of loss. The matters now in controversy relate to the affirmative defence that misstatements made by the insured in his application for the policy either were intentionally fraudulent or caused the risk of loss to appear less than the true information would have shown. G. L. (Ter. Ed.) c. 175, § 186.

The burden of proof respecting such misrepresentations in procuring the policy is upon the insurer. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452. *Smardon* v. *Metropolitan Life Ins. Co.* 243 Mass. 599, 601. The defendant proposed to sustain this burden by showing that the application for the policy contained statements which were untrue. It is provided by G. L. (Ter. Ed.) c. 175, § 131, that "unless a correct copy of the application is endorsed upon or attached to a policy of life or endowment insurance, when issued, the application shall not be considered a part

of the policy or received in evidence for any purpose.  Every such policy which contains a reference to the application, either as a part of the policy or as having any bearing thereon, shall have endorsed thereon or attached thereto, when issued, a correct copy of the application."  Therefore, in the case at bar, before being able to introduce the application in evidence or to rely upon the falsity of any of its statements, the defendant was required to show that a correct copy had been indorsed upon or attached to the policy.  *Considine* v. *Metropolitan Life Ins. Co.* 165 Mass. 462.  *Bockes* v. *Union Mutual Casualty Co.* 212 Iowa, 499, 510.

The plaintiff introduced evidence tending to show that the doctor, since deceased, who examined the insured at the time he applied for the policy, changed answers to certain questions in the application after it had been signed by the insured and before it was filed with the defendant.  It was agreed by counsel for both parties that in the application answers to questions concerning the dates and causes of death of the parents of the insured had been altered at some time by some one, the original answers having been crossed out and new ones superimposed.  In substance these alterations were that, under the head "Family Record," with reference to the father of the insured as originally written, the figures "65" were placed "in the age column," the date "1880" as time of death, and "Do not know" under the inquiry as to the cause of death; that, with reference to the mother of the insured, under the inquiry as to the cause of death was written "Do not know," and the date of death "1898"; that, after the signing of the application in this form, the insured left and went to his place of business and in his absence the physician called for and obtained from the daughter of the insured some other policies of insurance on his life and, after examining them, made changes in the application by which, in the case of the father of the insured, the cause of death was stated to be "appendicitis" in place of the answer "Do not know," and "1885" in place of "1880" and, in the case of the mother, the cause of death was stated to be "rheumatism" with

the abbreviation "sev. mus.," presumably for "severe muscular," in place of the answer "Do not know"; that the application as thus altered was transmitted to the defendant company and a policy of insurance was issued to which was attached a photostatic copy of the application as thus altered; that this policy was brought to the house of the insured during the first week of September, 1928, and the premium was paid. This evidence was substantially undisputed. In any event, it might have been found to be true by the jury.

On this state of the evidence the plaintiff excepted to rulings of the trial judge (1) excluding from the evidence the policy without the paper attached to it purporting to be a photostatic copy of the application of the insured, (2) admitting evidence tending to show the falsity of answers (other than those which had been altered) made by the insured in his application, and (3) ruling that the defendant had sustained as matter of law the burden of proving the exactness of the photostatic copy of the application attached to the policy. The correctness of all these rulings depends upon the soundness of the ruling that the defendant had sustained the burden of proving the accuracy of the copy of the application attached to the policy. If this ruling was right, there was no error in the others.

The enactment of G. L. (Ter. Ed.) c. 175, § 131, already quoted, was a constitutional exercise of legislative power to regulate insurance. Its purpose is to furnish to every person holding insurance upon his life a copy of the application, upon which the effectiveness of the policy may in some circumstances depend, so that he may know the exact terms of the contract. Therefore, the failure of the insurer to attach to the policy a correct copy of the application prevents reliance by the insurer, in an action against it on the policy, on misstatements in the application as a defence. *Considine* v. *Metropolitan Life Ins. Co.* 165 Mass. 462, 466. *Holden* v. *Prudential Ins. Co. of America,* 191 Mass. 153, 157. *Langdeau* v. *John Hancock Mutual Life Ins. Co.* 194 Mass. 56, 64. *New York Life Ins. Co.* v. *Hardison,* 199 Mass. 190, 194. The same consequences follow where the insurer

attaches a copy which is not correct, even though the variance occurs in a part of the application not material to any issue raised at the trial.  Slight or immaterial deviations from exactness in the copy do not require exclusion of the application.  The same is true of merely clerical discrepancies.  *Nugent* v. *Greenfield Life Association,* 172 Mass. 278, 283.  *Paquette* v. *Prudential Ins. Co.* 193 Mass. 215, 221. *Manhattan Life Ins. Co.* v. *Albro,* 127 Fed. 281.  *Stein* v. *New York Life Ins. Co.* 311 Penn. St. 210.

As already recited, there was evidence tending to show that, after the application was signed by the insured and before it was filed with the insurer, it was altered by the examining physician of the insurer.  The question at issue is whether "a correct copy of the application" of the insured was attached to the policy.  The argument has proceeded on the footing that "a correct copy of the application" as filed with the defendant was attached to the policy, but that "a correct copy of the application" as signed by the insured before any alteration was not so attached.  The plaintiff contends that no such copy was attached because of the alterations in the paper as signed by the insured. The defendant contends that the paper actually filed with it as the basis of the issuance of the policy is the application. The statute contains no definition of its phrase "correct copy of the application."  That must be determined with reference to the words of the statute as applied to the facts of the particular case.  Alterations in the application here in issue related to parts describing family history and the causes of death of the parents of the applicant.  Alterations are regarded as material when they might affect the rights of the parties.  Inaccuracy in copying such parts of the application has been held to be material, requiring the exclusion of the application.  *Nugent* v. *Greenfield Life Association,* 172 Mass. 278, 285.  *Manhattan Life Ins. Co.* v. *Albro,* 127 Fed. 281, 282.

The case at bar is different from any others which have been decided concerning G. L. (Ter. Ed.) c. 175, § 131, in that the alleged change in the application was not made through the intention or the carelessness of the insurer.

The conduct of the examining physician in altering the application was not within the scope of his agency for the insurer and, even if not authorized by the insured, was not binding on the defendant. *Gallant* v. *Metropolitan Life Ins. Co.* 167 Mass. 79. *Flynn* v. *Equitable Life Assurance Society,* 67 N. Y. 500. *Myers* v. *John Hancock Mutual Life Ins. Co.* 108 Ohio St. 175. See cases collected in 81 Am. L. R. 833. Where the insurer negligently or knowingly annexes to the policy an inaccurate copy of the application, the insured or his beneficiary is not estopped to set up the incorrectness of the copy by retaining the policy without protest. *Nugent* v. *Greenfield Life Association,* 172 Mass. 278. A party who has knowledge of the facts cannot rely upon estoppel because he has not been misled to his harm. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413, 414. *Hale* v. *Skinner,* 117 Mass. 474. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291. The statute imposes a positive mandate upon the insurer. Commonly, excuses for nonperformance of that mandate afford no defence to the insurer. There seems to be no reason for extending this rigid rule to the facts here disclosed. There is nothing in the record to indicate that the insurer had knowledge of the alleged change in the application. Apparently it used every reasonable effort to comply with the statute. It had no means of knowing that the application as filed with it had been altered after leaving the hands of the insured. It had every ground to believe that the application on file with it was genuine. The record contains no evidence to support a finding that alteration in the application ought even to have been suspected or information concerning it to have been discovered by the insurer. The legislative intent was to impose upon the insurer an obligation capable of being met and not one impossible of performance. The application actually filed with the defendant was the one accepted by it as the basis of the contract for insurance. It need not be decided whether there might be difficulty in holding that a contract of insurance sprang into being at the moment the policy was issued if there was mistake as to the genuineness of the application on the faith

of which it was issued. *Dzuris* v. *Pierce*, 216 Mass. 132, 135.
*Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1, 4.
*Rice* v. *Dwight Manuf. Co.* 2 Cush. 80, 86. It was said in
*Nugent* v. *Greenfield Life Association*, 172 Mass. 278, in
holding that a similar governing statute was valid and
binding upon the insurer and in commenting on its appar-
ent harshness: "If in any case an insurer suffers from hav-
ing unintentionally annexed a copy which is not correct, it
is because, having the means of annexing a correct copy,
and so being able to rely upon defences open to a contract
of which the application is a part, he breaks the law by an-
nexing an incorrect copy, or no copy at all, and is thereby
precluded from defences founded upon the application."
That principle has no application to the defendant on the
facts disclosed in the case at bar. The reasoning upon
which that principle rests would exonerate the defendant.
It had no means of annexing a correct copy of the ap-
plication as originally signed by the insured. It was
said in *Holden* v. *Prudential Ins. Co.* 191 Mass. 153, 157:
"It is not the policy of the law to create unnecessary
obstacles to the proof of fraud." That statement applies
with force to a case like the one at bar. Commonly, the
question whether the copy of the application attached to
the policy was correct ought to be submitted to the jury
where the evidence is conflicting. *Monjeau* v. *Metropolitan
Life Ins. Co.* 208 Mass. 1. Whether the reasons for the rul-
ing of the trial judge, to the effect that the burden of proving
that a correct copy of the application was attached to the
policy had been sustained, were sound, need not be dis-
cussed. The right decision was reached. *Reilly* v. *Select-
men of Blackstone*, 266 Mass. 503, 512. On this branch of
the case there was no reversible error in the rulings of the
trial judge.

It is provided by G. L. (Ter. Ed.) c. 175, § 186, that "No
oral or written misrepresentation or warranty made in the
negotiation of a policy of insurance by the insured or in
his behalf shall be deemed material or defeat or avoid the
policy or prevent its attaching unless such misrepresenta-
tion or warranty is made with actual intent to deceive, or

unless the matter misrepresented or made a warranty increased the risk of loss." Oral testimony and hospital records were introduced tending to show that the insured was suffering from various diseases of the heart — coronary infarct, angina pectoris, sclerosis of the coronary artery and coronary occlusion — before and at the time of applying for the insurance here in suit, and that certain of these conditions had existed for some years. Subject to the exception of the plaintiff, the jury were instructed that they might find that "coronary infarct and coronary occlusion are diseases of the heart, and of such seriousness the existence of which increased the risk of loss as matter of law"; and that, if the insured "was suffering from heart disease and had received treatment therefor at any time within five years before the date of his application and had misrepresented such disease or treatment," the plaintiff could not recover whether the insured knew that he had such disease or not.

Whether the existence of certain ailments increased the risk of loss under said § 186, commonly is a question of fact and not of law. Thus it has been held that the existence of rupture, *Levie* v. *Metropolitan Life Ins. Co.* 163 Mass. 117; *Collins* v. *Casualty Company of America,* 224 Mass. 327, 332; diabetes, *De Guzzi* v. *Prudential Ins. Co.* 242 Mass. 538; but compare *New York Life Ins. Co.* v. *Simons,* 60 Fed. (2d) 30, 33; kidney ailments, *Hogan* v. *Metropolitan Life Ins. Co.* 164 Mass. 448, 450; *Barker* v. *Metropolitan Life Ins. Co.* 198 Mass. 375; Bright's disease, *Kelly* v. *Mutual Life Ins. Co.* 207 Mass. 398; angina pectoris, *Foss* v. *Mutual Life Ins. Co.* 247 Mass. 10, 15; sarcoma, *Smardon* v. *Metropolitan Life Ins. Co.* 243 Mass. 599; or various other disorders requiring medical attention, *Levie* v. *Metropolitan Life Ins. Co.* 163 Mass. 117, 119; *Kidder* v. *Order of Golden Cross,* 192 Mass. 326, 333, 334; *Truedson* v. *Metropolitan Life Ins. Co.* 261 Mass. 121, 124–125, do not require a ruling of law that the risk of loss was increased. On the other hand, there are conditions and diseases of such a nature as to require the conclusion as a matter of law that a misrepresentation in-

creases the risk of loss, as for example: alcoholism, *Rainger* v. *Boston Mutual Life Association,* 167 Mass. 109; *Langdeau* v. *John Hancock Mutual Life Ins. Co.* 194 Mass. 56, 57; cancer, *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 453; consumption, *Brown* v. *Greenfield Life Association,* 172 Mass. 498, 503; five years greater age than stated in the application, *Dolan* v. *Mutual Reserve Fund Life Association,* 173 Mass. 197, 200; *S. C.* 182 Mass. 413; compare *Coughlin* v. *Metropolitan Life Ins. Co.* 189 Mass. 538.

In the case at bar there was evidence warranting a finding that the insured had disease of the heart serious enough to require hospitalization and other medical attention; there was nothing which required a ruling of law that the risk of loss was thereby increased. *Foss* v. *Mutual Life Ins. Co.* 247 Mass. 10, 15. *Smardon* v. *Metropolitan Life Ins. Co.* 243 Mass. 599. Although the evidence appeared very persuasive, the question ought not to have been taken from the jury. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452. *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 433. The result is that the rulings of the trial judge upon this point were erroneous.

The parties have stipulated for the entry of judgment in the event that the rulings of the trial judge are either correct or erroneous. The stipulation does not cover the event which has come to pass, namely, rulings covering one branch of the case are not reversed and rulings covering another branch are held erroneous. We think, therefore, that the stipulation ought to be vacated and the case to stand for a new trial. *Delano* v. *Smith,* 206 Mass. 365, 372. *Symmes Arlington Hospital, Inc.* v. *Arlington,* 292 Mass. 162, 165.

*So ordered.*