TAKOUHI PAHIGIAN *vs.* THE MANUFACTURERS' LIFE INSURANCE COMPANY.

Suffolk. February 5, 1965. — April 22, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Insurance,* Life insurance: application, "correct copy" of application, representations; Issuance of policy; Waiver. *Waiver. Conflict of Laws. Agency,* Scope of authority. *Law or Fact. Evidence,* Presumptions and burden of proof, Prima facie evidence, Death certificate, Evidence binding a party. *Practice, Civil,* Ordering verdict. *Words,* "Correct copy."

At the trial of an action upon a life insurance policy purporting to include a copy of the application as a part thereof, the trial judge was not precluded from striking the copy of the application from the record without the defendant's consent as not being a "correct copy" within G. L. c. 175, § 131, by the fact that the plaintiff had introduced the copy in evidence with the policy. [82]

Where everything in connection with the obtaining of a life insurance policy by an applicant occurred in Massachusetts except the formal issuance of the policy at the insurer's head office in Canada, the insurance contract was a Massachusetts contract and G. L. c. 175, § 131, applied to it. [82–83]

There was no merit in a contention by a life insurance company that an addition by its branch office manager of certain words in the application for a policy after the applicant had signed the application was beyond the scope of the manager's authority and that therefore the addition did not prevent the copy of the application attached to the policy from being a "correct copy" within G. L. c. 175, § 131. [83]

At the trial of an action upon a life insurance policy, the judge properly ruled that certain words were added to the application after the applicant had signed it, instead of leaving to the jury the question when they were added, where the insurer's salesman in his testimony finally adhered consistently to a statement that the words were added after the applicant signed and testimony of the insurer's branch office manager corroborated that statement. [83]

In the circumstances, the addition by the branch office manager of a life insurance company of the words "good recovery" to the words "Usual childhood diseases" in an application for a policy after the applicant had signed the application was not so material an alteration as to prevent a copy of the application attached to the policy from being a "correct copy" within G. L. c. 175, § 131. [84–85]

Failure of an applicant for a life insurance policy to give truthful answers to medical questions in the application increased the risk of loss as matter of law and entitled the insurer to avoid the policy and to a directed verdict in an action against it by the beneficiary on the policy where in all likelihood truthful answers to the questions and consequent investigation would have revealed to the insurer that the applicant was suffering from Hodgkin's disease of which he later died. [85]

At the trial of an action upon a life insurance policy, the burden is on the insurer to prove that misrepresentations by the insured in obtaining the policy increased the risk of loss and entitled the insurer to avoid the policy. [85]

A conclusion that the insured in a life insurance policy died of a certain disease was required where the death certificate so stated and there was no evidence to the contrary. [85]

Hodgkin's disease, if suffered by an applicant for a life insurance policy, as a matter of law would increase the risk of loss to the insurer within G. L. c. 175, § 186. [86]

At the trial of an action upon a life insurance policy defended by the insurer on the ground that medical misrepresentations by the applicant entitled it to avoid the policy, the plaintiff beneficiary was bound by her testimony concerning hospitalization of the insured supporting such defence. [86–87]

CONTRACT. Writ in the Superior Court dated June 12, 1962.

The action was tried before *Kalus*, J.

*Will J. Bangs* (*Weld S. Henshaw* with him) for the defendant.

*Frank G. Lichtenstein & Mark Lichtenstein*, for the plaintiff, submitted a brief.

REARDON, J. This case comes to us on exceptions alleged by the defendant, The Manufacturers' Life Insurance Com-

pany (the company), to the allowance of the plaintiff's motion for directed verdict, to the denial of the defendant's like motion, and to rulings of the trial court respecting the admissibility of evidence.

At the trial the parties agreed as follows: On January 4, 1961, the company issued a life insurance policy to Misak Pahigian (the insured) in the amount of $5,000 with a "Supplemental Term Benefit" in the additional amount of $5,000. All premiums were paid by the insured up to the time of his death on February 7, 1962. The company declined to pay the amount of the policy to the plaintiff, who was the designated beneficiary, but offered to return to the plaintiff all the premiums paid. This offer was refused.

The insurance policy, introduced in evidence by the plaintiff, consisted of the policy form, the "Supplemental Term Benefit," and an "Application for Insurance" (the application). The application, dated December 28, 1960, and signed by the insured, includes a "Declaration of Insurability." This declaration, which the company maintains contains several misrepresentations,[1] also contains the statement "Usual childhood diseases good recovery."

Zakar Hanoyan testified at the trial that he was a salesman for the company; that he discussed life insurance with the insured on December 28, 1960, at which time he read each question on the declaration of insurability to the insured and recorded his answers; and that the insured stated that he "had never had anything except the usual things that little kids have, such as measles and so forth."[2] The witness testified that he (Hanoyan) "qualified this with the phrase, 'Usual childhood diseases' and 'good recovery'" and that, upon completion of the entire application,

---

[1] The misrepresentations alleged are negative answers by the insured to questions asking whether he had had (1) disturbances of the glandular system such as enlarged glands; (2) tumor or cancer; (3) X-rays; (4) weight change in past year; (5) illness, injury, operation, or medical examination not mentioned above. A "No" answer appears also after the question "Do you now have any disease or symptoms of disease?"

[2] This statement was made in response to the requirement, contained in the declaration, that the insured "[g]ive full particulars, condition, dates, duration, results, full names and addresses of doctors, hospitals and clinics."

the insured signed it in his presence.  On cross-examination Hanoyan stated that while the phrase "Usual childhood diseases" was written by him, the phrase "good recovery" was written "by the company."  Later in the proceedings Hanoyan was recalled as a witness.  He reiterated that the words "good recovery" were added to the application sometime after the insured signed it, either at the Boston office or at the home office of the company.  The manager of the Boston office testified that the words "good recovery" were "similar to my type of writing" and that the insured was not present when the words were inserted. To the question "And after you inserted those words . . . you forwarded the application to the home office?" the manager responded "Yes, we do."

Evidence presented by the company tended to show that from April, 1959, until the time of his death the insured underwent treatment for a swelling on the left side of the neck.  From April 12 to April 15, 1959, the insured was hospitalized at the Parker Hill Medical Center, the records of which indicate a discharge diagnosis of "Hodgkin's Disease, adenopathy, left neck; surgery performed: excision of glands, left neck."  The insured was hospitalized at the West Roxbury Veterans Administration Hospital on eight separate occasions, the first being from April 24 to May 28, 1959.  The records of the hospital show a diagnosis of Hodgkin's disease.  From August 9 to September 7, 1960, the insured was an in-patient at the Veterans Administration Hospital.  According to Dr. Alan Aisenberg, a specialist in the treatment of Hodgkin's disease, who examined the hospital records and appeared for the company as an expert, the insured was afflicted with Hodgkin's disease which had reached its most serious stage (the so called "Stage 3") by September, 1960, at which time the insured had "only a ten-per-cent chance of surviving five years." Dr. Aisenberg testified that irradiation (X-ray treatment) should be given to combat Hodgkin's disease and that the insured did receive irradiation.

The evidence of extended treatment and hospitalization of the insured included that of his widow, the plaintiff, who

was called by the defendant and testified that in addition to his hospitalizations in 1959 and 1960 the insured "had been going back to the Veterans Administration Clinic . . . right up until the 27th of December, 1960." The plaintiff testified that she first learned the nature of her husband's illness in the spring of 1961 and that her husband never indicated whether he knew he had Hodgkin's disease.

Upon completion of arguments of counsel the judge stated that the addition of the words "Good recovery . . . constitutes an alteration as a matter of law and brings into operation Section 131" of G. L. c. 175.[3] The judge allowed the plaintiff's motion to strike the application and all medical testimony from the record and directed a verdict for the plaintiff.

1. We consider at the outset four arguments of the defendant. The first is that since the plaintiff introduced the application in evidence it could be struck only with the defendant's consent. Such a rule would, on these facts, impose a waiver upon the plaintiff. She would be unable to bring an action upon the policy without affirming the contract as it purported to be made, including the application as part of it. The action carries with it no such affirmance. *Nugent* v. *Greenfield Life Assn.* 172 Mass. 278, 281–282.

Second, the company urges that G. L. c. 175, § 131, does not apply because the policy was issued at the company's head office in Toronto, Canada. Reliance is placed on *Johnson* v. *Mutual Life Ins. Co.* 180 Mass. 407, where it was held that St. 1894, c. 522, § 73,[4] did not apply to an insurance policy issued by a New York corporation doing business in Massachusetts to one living in New Hampshire but

---

[3] General Laws c. 175, § 131, provides: "Unless a correct copy of the application is endorsed upon or attached to a policy of life or endowment insurance, when issued, the application shall not be considered a part of the policy or received in evidence for any purpose. Every such policy which contains a reference to the application, either as a part of the policy or as having any bearing thereon, shall have endorsed thereon or attached thereto, when issued, a correct copy of the application."

[4] This statute was a predecessor of G. L. c. 175, § 131. It varies from the present statute in no respect now material, and we treat cases arising under the earlier version as fully applicable to the present case.

domiciled in Massachusetts. The factual differences between the *Johnson* case and the present case are substantial. Here everything except the formal issuance of the policy occurred in Massachusetts. In such a situation the public policy expressed by G. L. c. 175, § 131, cannot be avoided by means of formalism which disregards the substance of the entire transaction. The contract was a Massachusetts contract. *Albro* v. *Manhattan Life Ins. Co.* 119 Fed. 629 (D. Mass.), affd. 127 Fed. 281 (1st Cir.), cert. den. 194 U. S. 633. See *Wilde* v. *Wilde,* 209 Mass. 205, 207; *Hyfer* v. *Metropolitan Life Ins. Co.* 318 Mass. 175, 177.

The company further contends that even if the statute is applicable, there is no evidence that the person who added the words "good recovery" acted within the scope of his agency. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, holds that an alteration made outside the scope of the agency does not prevent an application from being a "correct copy." Here, however, the alteration was made by "the company" in the person of the branch office manager. It requires no citation of authority to say that the office manager is an agent with broad powers. To allow the company to avoid the consequences of an act of its own high ranking employee would effect a severe and undue constriction on the operation of the statute. See *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass. 649, 654–655.

We sustain also the ruling of the judge that the alteration took place after the insured signed the application. The evidence on this point was not conflicting in any meaningful sense, although Hanoyan did originally indicate that the phrase "good recovery" was written on the application by him before it was signed by the insured. Once the matter was called to his attention on cross-examination the witness agreed and adhered consistently to the position that the words were inserted later by some other person. The testimony of the office manager tends to show that it was he who added the words. The question of when the insertion was made, therefore, was not one requiring a jury determination. *Sullivan* v. *Boston Elev. Ry.* 224 Mass. 405, 406.

2.  No definition of the phrase "correct copy of the application" appears in the statute. "That must be determined with reference to the words of the statute as applied to the facts of the particular case." *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 174. We construe the phrase to mean that a copy is not correct where variances appear between the application at the time it is signed and the time it is returned to the applicant as part of the insurance policy. Thus, for example, where the insurer "annexes . . . an inaccurate copy of the application, the insured or his beneficiary is not estopped to set up the incorrectness of the copy by retaining the policy without protest." *Schiller* v. *Metropolitan Life Ins. Co., supra,* at 175.

Where the insurer fails to attach a correct copy, it cannot rely, in an action against it on the policy, on misstatements in the application as a defence. *Schiller* v. *Metropolitan Life Ins. Co., supra,* at 173, and cases cited. The inaccuracy which will bring G. L. c. 175, § 131, into play need not be material to any issue raised at the trial. *Nugent* v. *Greenfield Life Assn.* 172 Mass. 278, 283. The purpose of the statute is in part "to impose upon corporations and their officers a positive duty in respect to the issuing of policies containing any reference to the application." *Nugent* v. *Greenfield Life Assn., supra,* at 282.

Notwithstanding the strictness with which § 131 has been applied, the cases recognize that it is not every variation which will result in the application of the statute. The copy need not be exactly and literally "correct." "*Slight* or immaterial deviations from exactness in the copy do not require exclusion of the application. . . . Alterations are regarded as material when they might affect the rights of the parties" (emphasis supplied). *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 174. Upon careful consideration we have concluded that the phrase "good recovery" added to "Usual childhood diseases" is not such an alteration as to require the exclusion of the application from evidence under § 131. If the alteration added anything to the meaning of the phrase "Usual childhood diseases" such

addition was minimal. Thus it was error for the judge to exclude the application and the medical testimony submitted by the company in defence of the action.

3. We next consider whether the company was entitled to a directed verdict. Misrepresentations by the insured which are made with actual intent to deceive or which increase the risk of loss will, if proved, enable the company to avoid the policy. G. L. c. 175, § 186.[5] We hold that misrepresentations of the insured did, as a matter of law, increase the risk of loss and that the company's motion for a directed verdict should have been allowed.

The burden of proof is on the defendant to show an increase of the risk of loss by reason of misrepresentations. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452. Ordinarily this question is one of fact. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 177. It has been held, however, that misrepresentation as to certain diseases does require, as a matter of law, the conclusion that the risk is increased. *Rainger* v. *Boston Mut. Life Assn.* 167 Mass. 109 (alcoholism). *Brown* v. *Greenfield Life Assn.* 172 Mass. 498 (consumption). *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450 (cancer). In the present case, a finding that the insured died of Hodgkin's disease is compelled. The death certificate, which is prima facie evidence (G. L. c. 46, § 19), so states and is to be taken as true in the absence of evidence to the contrary. *Lydon* v. *Boston Elev. Ry.* 309 Mass. 205, 213. *Rappe* v. *Metropolitan Life Ins. Co.* 320 Mass. 376, 381–382.

The record before us is replete with uncontradicted evidence of the seriousness of Hodgkin's disease. Dr. Aisenberg stated that the disease is made up of three progressive stages and that in at least seventy-five percent of the cases it is fatal in a period of months or a few or many years.

---

[5] This statute provides: "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

The attitude of the company towards Hodgkin's disease was presented by the company's associate medical director, who testified that there was a special rule for applicants having the disease.[6]  We are of the view that Hodgkin's disease falls clearly into the class of illnesses which, as a matter of law, increase the risk of loss.  In this we concur with the Supreme Court of Alabama which, under a statute very similar to G. L. c. 175, § 186, has so held.  *New York Life Ins. Co.* v. *Horton,* 235 Ala. 626.

In *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 453, it was held that, where it did not appear that the trial proceeded upon the footing that the insured actually had cancer at the time the policy was issued, it was for the jury to decide whether such was the fact, even though the medical evidence was uncontradicted.  Rarely can a verdict be directed in favor of the party having the burden of proof.  See *Companion* v. *Colombo,* 338 Mass. 620, 623.

Assuming in favor of the plaintiff that a jury might have decided that the company had failed to prove that the insured had Hodgkin's disease on December 28, 1960, the plaintiff nonetheless is bound by her testimony admitting that the insured was hospitalized in April, 1959, and in August and September of 1960.  The insured failed to disclose this medical history at the time of the issuance of the policy.

The insured's misrepresentations themselves increased the risk of loss.  Failure to give truthful answers (see fns. 1 and 2) deprived the insurer of the opportunity to undertake further investigation which, in all likelihood, would have revealed the diagnosis of Hodgkin's disease, first made in April, 1959.  Such misrepresentations were as prejudicial as would have been misrepresentations by the insured that he did not have Hodgkin's disease.  In either case the insurer would have failed to receive the candid

---

[6] The company's rule was: "Hodgkin's disease, active within five years, declined; active within six to ten years, plus one hundred to plus three hundred; more than ten years since active, plus thirty to plus seventy-five, with a minimum extra of forty-five dollars per thousand."

answers necessary for it to evaluate the risk involved. We decline to follow anything to the contrary which may be implicit in the language of *De Guzzi* v. *Prudential Ins. Co.* 242 Mass. 538, and *Metropolitan Life Ins. Co.* v. *Burno,* 309 Mass. 7, 11–12. In these circumstances the insurer is entitled to avoid the policy.

*Exceptions sustained.*
*Judgment for the defendant.*