Jack H. SHAPIRO, et al., Plaintiffs,

v.

AMERICAN HOME ASSURANCE COMPANY, et al., Defendants.

Civ. A. No. 75–2728–K.

United States District Court, D. Massachusetts.

April 25, 1984.

Edward J. Barshak, Jeffrey Somers, Gadsby & Hannah, Alexander Finger, Boston, Mass., for Jack Shapiro.

Oscar Wasserman, Wasserman, Feinberg & Weisman, Newton, Mass., for Alfred H. Bloom.

Gael Mahony, Timothy J. Dacey and G. Richard Shell, Hill & Barlow, Boston, Mass., for American Home Assur.

Robert Owens Assoc., Boston, Mass., for Pacific Indem., Surplus Lines & Charles Henry Alan Skey.

Memorandum

KEETON, District Judge.

This case is before me on defendant's motion for summary judgment. Plaintiffs, former officers and directors of Giant Stores, seek a declaration that they are covered under a directors' and officers' ("D & O") liability insurance policy issued by defendant. Defendant moves for summary judgment on the ground that the policy is voidable because the application for insurance contained misrepresentations made by plaintiff Shapiro, formerly Giant's president.

The undisputed facts establish that on July 7, 1972 Shapiro signed an application for insurance that contained the following: "Question No. 14: Does any Director or Officer have knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy?" To this question, Shapiro answered "No." The application further states, in Item No. 17: "It is agreed that if such knowledge or information exists any claim or action arising therefrom is excluded from this proposed coverage." The application states that the form was the basis of the contract and would be attached to any policy that was issued. Cavallaro Aff., Ex. No. 5. Attached to the application was a copy of Giant's 1972 financial statements.

The policy provides for $5 million in coverage for a three-year period beginning July 26, 1972. Following the Lloyd's form for D & O policies, it contains two parts. The first part insures the company for any indemnification it provides to a director or officer. The second part provides direct coverage for individual directors and officers.

In 1977, plaintiffs Shapiro and Kaufman, along with other Giant officers, were indicted for securities fraud. Shapiro was convicted in 1978 after a jury-waived trial in this district. The trial judge found that Shapiro was "a party to and a participant in the making of a deliberate misstatement of income in the financial statement for FY 72, with an intent to defraud." *United*

*States v. Lieberman,* CR 77-135-S (D.Mass. Aug. 3, 1978) at 12, *aff'd* 608 F.2d 889 (1st Cir.1979), *cert. denied* 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980). Kaufman pleaded guilty on July 10, 1978 to two counts of fraud in connection with the filing of the false financial statements.

Plaintiffs have been named as defendants in five securities fraud cases filed in this district and the Southern District of New York. Third-party defendant Touche Ross, which had initially certified the 1972 financial statements and which had been named as a defendant in the securities fraud cases, has settled with plaintiffs in those cases and has been assigned the plaintiffs' claims. Touche Ross also opposes American Home's motion in this action.

## I.

■ In determining a motion for summary judgment, the court must look at the record in the light most favorable to the nonmoving party and must draw all inferences in favor of that party. *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 928 (1st Cir.1978). The movant has the burden of showing the absence of a disputed issue of material fact. *Mack v. Cape Elizabeth School Board,* 553 F.2d 720, 722 (1st Cir.1977). However, once a movant supports the motion for summary judgment as set forth in Fed.R.Civ.P. 56, the nonmoving party cannot defeat the motion by resting on mere allegations or conclusions in its pleadings. No genuine dispute of fact is shown unless facts supporting the nonmoving party's contention can be inferred from fully credited admissible evidence. *See generally* 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2721 (2d ed. 1983).

■ American Home argues that, by virtue of Shapiro's conviction, plaintiffs here are collaterally estopped from litigating the falsity of Shapiro's statement in the application. The nonmoving parties object that there is not sufficient privity between Shapiro and other plaintiffs to invoke collateral estoppel. A decision on this question, however, is not necessary to a ruling on the

motion for summary judgment. Even without the application of collateral estoppel, no dispute exists over the falsity of Shapiro's statement that no "Director or Officer [has] knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy." No evidence has been called to the court's attention by any party that would support a contention that there is a genuine dispute over this factual issue. Thus, on this issue, this case is within that very exceptional group in which summary judgment for the party with the burden of proof is appropriate.

Nonmoving parties do claim that there are disputes over whether the other plaintiffs knew of the wrongdoing at the time the application was filed. American Home, however, contends that this question is not relevant to a determination of the validity of the insurance policy. Whether a misrepresentation in the application made by one officer defeats coverage under a D & O policy for other, innocent officers and directors. is a question of law which I consider in Part III, *infra.*

## II.

American Home argues that the falsity of Shapiro's statement invalidates the insurance contract from the start.

■ In this diversity case, the court must apply the Massachusetts choice of law rules to determine the applicable law governing the contract. *Klaxon v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940). In Massachusetts, the law of the place where the contract was made governs. *Dicker v. Klein,* 360 Mass. 735, 277 N.E.2d 514 (1972). The application for the insurance policy in this case was made and delivered in Massachusetts. Nadas Aff., Ex. 7. Although the underwriting decision was made in New York, the policy was actually bound and delivered in Massachusetts. *Id.* Under these undisputed facts, Massachusetts law applies to the insurance contract. *Pahigian v. Manufacturers' Life,* 349 Mass. 78, 206 N.E.2d 660

(1965). I would reach the same conclusion if I were to apply the "most significant relationship" test to the choice of law problem. *Choate, Hall & Stewart v. SCA Services, Inc.,* 378 Mass. 535, 392 N.E.2d 1045 (1979); *Restatement (Second) of Conflict of Laws* § 188 (1971).

The governing Massachusetts law, Mass. Gen.Laws ch. 175, § 186, states that:

> no ... misrepresentation ... made in the negotiation of a policy of insurance by the insured or on his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation ... is made with actual intent to deceive, or unless the matter misrepresented ... increased the risk of loss.

American Home contends that no disputed factual question arises from application of this statute to the present case. Touche Ross contends that factual disputes exist over whether the misrepresentation was "material" and whether it induced reliance by the insurer.

■ The Massachusetts statute is declaratory of longstanding common law principles defining the kind of false representations that can serve to avoid an insurance policy. *Kidder v. Supreme Commandery United Order of the Golden Cross,* 192 Mass. 326, 78 N.E. 469 (1906) (construing predecessor of statute). Under the common law, only a material misrepresentation by an applicant could invalidate the insurance policy. *Campbell v. New England Mutual Life Insurance Co.,* 98 Mass. 381, 395 (1867). Statements that misled the underwriter as to the nature of the risk being undertaken were considered material. *Daniels v. Hudson River Fire Insurance Co.,* 66 Mass. (12 Cush.) 416 (1853); *Curry v. Commonwealth Insurance Co.,* 27 Mass. (10 Pick.) 535 (1830). If an insured falsely states facts that heighten the risk being insured against, this misrepresentation is material.

■ In this case, I conclude that there is no dispute of fact over whether Shapiro's misrepresentation concerned matters that increased the risk of loss under the D & O policy. Massachusetts cases have held that whether a false statement increases risk is ordinarily a question of fact for the jury. *See, e.g., Davidson v. Massachusetts Casualty Insurance Co.,* 325 Mass. 115, 89 N.E.2d 201 (1949). However, an established line of cases has recognized that certain misrepresentations, such as a false statement in an application for life insurance that the applicant does not have cancer, increase risk of loss as a matter of law. *See, e.g., Pahigian, supra,* 206 N.E.2d 660; *Lennon v. John Hancock Mutual Life Insurance,* 339 Mass. 37, 157 N.E.2d 518 (1959).

The facts misrepresented by Shapiro were those that an insurer issuing a D & O policy is most likely to consider in making the underwriting decision. Since D & O insurance is a relatively recent phenomenon, and since the scope of coverage is potentially quite large, companies have reason to be very careful in issuing policies. "The general financial condition of the corporation in the present as well as the past is very important.... A second important factor which the insurer looks into is the record of prior claims and litigations of the corporation.... A third major factor is the business experience of the directors and officers and their involvement or lack of involvement in prior litigation. The insurer will prefer to insure directors with a clear record of litigation." M. Schaeftler, *The Liabilities of Office: Indemnification and Insurance of Corporate Officers and Directors* 153 (1976).

In this case, Shapiro submitted a financial statement for 1972 that grossly overstated Giant's earnings. More than that, however, Shapiro falsely stated in the application for insurance that he did not know of any "act, error or omission" by Giant officials which might give rise to a claim. The filing of a false financial statement exposes a company and its officers to civil liability by investors and stockholders under common law and federal securities law. These are the very risks against which Giant was seeking insurance.

Parties opposing the motion for summary judgment point to no evidence that would support a contention that the facts misrepresented by Shapiro did not increase the risk of liability for Giant officers and directors. Thus, the misrepresentation "increased the risk of loss" under the policy of insurance, as that phrase is used in the statute, and was "material," as that term has been used both before and after enactment of the statute. Since the statute requires only that the insurer prove either that a misrepresentation increased the risk of loss *or* was made with actual intent to deceive, I need not consider legal or factual issues concerning Shapiro's intent in making the statement.

■ Touche Ross also argues that American Home must prove that there had been reliance by the insurer on the misrepresentations. The weight of Massachusetts authority does not consider "reliance" as a separate element which an insurer must prove in order to invalidate an insurance policy. *See, e.g., Pahigian, supra,* 349 Mass. 78, 206 N.E.2d 660; *Davidson, supra,* 325 Mass. 115, 89 N.E.2d 201. *Cf. Bouley v. Continental Casualty Co.,* 454 F.2d 85, 88 (1st Cir.1972) (applying Connecticut law; holding that insurer presumptively relies on material misstatements in application). The one exception cited by Touche Ross, *Rose & Lucy Inc. v. Resolute Insurance Co.,* 249 F.Supp. 991, 992 (D.Mass.1965), has not been cited by Massachusetts courts, which have invalidated insurance policies because of material misrepresentations without discussing proof of reliance. It is likely that reliance is not treated as an independent requirement because the standard of materiality under Massachusetts common and statutory law is such that any statement that is shown to be material is one so central to the risk being insured that the insurer would be expected to take it into consideration in making the underwriting decision. Indeed, in doing so the insurer would be serving not only its own interest but also the public interest in controlling costs to the insurance system that would result from misrepresented risks. Materiality has long been

defined as something "the knowledge or ignorance of which would naturally influence the judgment of the underwriter in making the contract at all, or in fixing the rate of the premium." *Daniels, supra,* 66 Mass. at 425. This description is especially apt when the statutory "risk of loss" standard is satisfied by the insurer, as it has been in this case. The statute states no added requirement of proof of reliance, and the Massachusetts courts have imposed none.

Even if I were to accept the debatable contention that reliance is required, I conclude that there is no genuine dispute of fact on that issue in this case. The undisputed facts show that American Home proceeded with caution in assuming the risk of the D & O policy. American Home had twice refused coverage because of Giant's rapid growth and high debt. Before deciding to issue the policy in 1972, the insurer requested Giant's 1972 financial information. In view of this evidence, I conclude that a finding that American Home had failed to prove reliance on the misrepresentation would be insupportable. The only contrary evidence Touche Ross cites is the statement of Anthony Martini, an American Home underwriter, who testified in his deposition that he didn't know if corrections in the financial statement eliminating the fraud would have been "dispositive" in a decision to reject the application. Martini indicated repeatedly in his testimony, however, that Giant's financial health was of the utmost importance to the insurer.

More decisive in the present case, in any event, is the fact that the application contained a false statement disclaiming knowledge of "any act, error or omission which might give rise to a claim." No party points to any evidence whatsoever that could put into dispute American Home's claim that it relied on this misrepresentation in deciding to insure Giant.

In conclusion, I determine that there are no disputes as to the facts that Shapiro made material misrepresentations on the

insurance application that increased American Home's risk of loss.

## III.

■ I must now consider whether the policy can be invalidated not only as to Shapiro but also as to other directors and officers, even if they had no knowledge of the wrongdoing at the time the application was made.

Relieving the insurer of all liability under the policy because of misrepresentations made by the insured significantly undercuts the protection that directors may derive from D & O insurance. This problem is particularly acute for lower-level corporate officers or "outside" directors who may be unaware of wrongdoings committed by higher-ranking insiders. In fact, the recent increase in corporations seeking D & O insurance is in part a response to the reluctance of outsiders to serve as directors without some protection against personal liability. *Wall Street Journal*, July 12, 1976 at 1 col. 6. On the other hand, relieving the insurer of liability only for the acts of the single director who makes the misrepresentation may save the insurer nothing, since all directors are likely to be jointly and severally liable for the wrongdoing committed by any one.

This case is not the first in which an insurance company has sought to avoid all liability under a D & O policy because of misrepresentations made by one of the insureds. However, in no case called to my attention has the question been litigated to conclusion. In some cases, the parties have settled, with the insured accepting considerably less than the amount provided by the policy. *Shlensky v. Dorsey*, 574 F.2d 131, 148 n. 11 (3rd Cir.1978); *American Employees Insurance Co. v. King Resources Co.*, 556 F.2d 471, 475 (10th Cir. 1977). *See* J.W. Bishop, *The Law of Corporate Officers and Directors: Indemnification and Insurance*, ¶ 8.05 at 8–19 n. 38 (1981). In another case, the court granted summary judgment dismissing the claim of

an insured that the insurer's refusal to pay under a D & O policy was vexatious and unreasonable. *Automotive Wholesalers of Illinois v. National Union Fire Insurance Co.*, 501 F.Supp. 1205 (N.D.Ill.1980).

The issue received the fullest consideration in the Penn Central litigation, in which the insurer sued to rescind a D & O policy on the ground that one insured made a false statement in the application. The court rejected the "innocent" insureds' motion for summary judgment, on the grounds that the officer who made the false statement was acting as an agent for the others and thus his fraud was binding on them. *Bird v. Penn Central*, 334 F.Supp. 255 (E.D.Pa.1971), *on rehearing* 341 F.Supp. 291 (E.D.Pa.1972).[1]

The agency analysis relied on in *Bird* presents a problem, however, since an innocent director or officer, particularly an "outsider," may have no control over the individual who applies for insurance coverage. Thus, binding the directors as principals is somewhat fictional. Certainly, in this case, it is unlikely that Shapiro, the president, was under the control of other plaintiffs, who were lower than he in the corporate hierarchy.

The court in *Bird* responded to this objection by reasoning that, in asserting their rights under the policy, the innocent insureds were affirming the contract procured by the fraudulent director and thus were ratifying his actions as agent on their behalf. Ratification analysis, if applied to this case, would also be an extension of agency doctrine beyond its usual scope. Ratification does not create an agency where none existed, but instead can be used to make a principal responsible for unauthorized acts performed by one who was in fact acting as an agent. " 'Ratification is limited to the adoption of an act purporting to be done, or in fact done, on behalf of the principal ....' If the agent did not intend to act as agent, there is no agency and there can be no ratification of

---

1. After two unrelated reported decisions were rendered, *see* 351 F.Supp. 700 (E.D.Pa.1972) and 61 F.R.D. 43 (E.D.Pa.1973), this case was settled out of court. *See* Bishop, *supra*, at 8–19.

the act of one not acting as an agent." *Allen v. Liston Lumber Co.*, 281 Mass. 440, 183 N.E. 747, 749 (1933). *See also Commercial Credit Corp. v. Stan Cross Buick, Inc.*, 343 Mass. 622, 180 N.E.2d 88 (1962); *Restatement (Second) of Agency* § 85 (1958). In this case, the fact that individual officers and directors relied on insurance coverage procured by Giant on their behalf cannot convert their relationship with Shapiro into one of agency, where critical elements of an agency relationship, such as control, were missing.

▇▇▇ Instead of relying on an agency analysis which does not fit the circumstances of this case, I consider the question of the coverage under this policy as one of contract interpretation. The language in the application form, which was part of the insurance contract, is straightforward. The form, in Question No. 14, inquires about knowledge of *any* officer or director concerning facts which might give rise to claims under the policy. Because of the likelihood of joint and several liability being imposed on all directors for the wrongdoing of one, the facts known by Shapiro were highly material not only to his potential liability, but to that of all other directors. Since Shapiro's answer misrepresented the risk incurred in insuring all those covered by the policy, it follows that American Home can avoid responsibility to all the insureds on the basis of that misrepresentation. Nothing in the contract indicates that the parties intended a different result.

There is no reason why the parties could not have negotiated a contract expressly providing the kind of protection to "innocent" insureds that plaintiffs and Touche Ross ask the court to impute to the agreement. There is a well-established technique for providing such protection to mortgagees in the "union" or "standard" mortgage clauses. Under the terms of those clauses, misrepresentations made by the mortgagor in applying for insurance will not deprive the mortgagee of protection under the policy. *See* 6A Appleman *Insurance Law and Practice* § 4164 at 482

nn. 56–57 (1972) and cases cited therein. The conclusion I reach in construing the contract at issue here is fortified by the observation that the technique exemplified by the "union" or "standard" mortgage clause must have been known to the parties to this contract and nevertheless was not used.

▇▇▇ In addition to the defense of misrepresentation, American Home has available a second and independent defense of non-coverage. The application for the policy, in Item No. 17, excludes coverage for any claim arising from facts known by any director or officer at the time of the application. In this case, the matter that Shapiro knew about and falsely represented led directly to the claims against all the insureds. Thus, the contract unambiguously excludes such claims from coverage. In order to assert the defense of non-coverage, American Home need not prove any of the elements of a misrepresentation defense, as such. Perhaps the practical equivalent of materiality or increase of risk is implicit in the relationship between Item 14 (the representation) and Item 17 (the non-coverage agreement) of the application form. But Touche Ross's arguments that a factual dispute exists over the question of reliance would not be relevant to the non-coverage defense. American Home need only prove that, at the time Shapiro signed the application form, he knew of facts which might give rise to claims and that the claims plaintiffs now are making under the policy arise from those facts. Whether or not that is the practical equivalent of materiality or increase of risk, there is no genuine dispute of fact as to whether that showing has been made here. Therefore, American Home is entitled to summary judgment on the ground that plaintiffs' claims are excluded from coverage under the policy.

▇▇▇ Touche Ross suggests an alternative interpretation of the policy by arguing that it should be viewed as a series of separate contracts between the insurer and each individual officer. The result of such an interpretation, Touche Ross argues,

would be to exclude from the coverage afforded to any individual director only those claims arising from facts known by him at the time of the application.

Several obvious considerations militate against this construction of the contract. The policy was negotiated and obtained by Giant as a single unit. One premium was paid by Giant for all the coverage. Further, the interpretation Touche Ross suggests would provide inadequate protection to the interest of the insurer. Because of the possibility of any one director being jointly and severally liable for the wrongdoing of fellow directors, the insurer would be very unwise to inquire about the knowledge of only one director before insuring him or her. I cannot assume, in the face of the clear language of the insurance contract, that this is what American Home meant to do, or what Giant understood American Home to mean, or what the contract language manifested.

 Touche Ross makes the final argument that invalidating the insurance contract would be unfair and contrary to public policy. With regard to the question of fairness, I note the opinion in *Bird,* which stated that "[w]hile we sympathize with [the innocent insureds'] position and recognize that innocent officers and directors are likely to suffer if the entire policy is voidable because of one man's fraudulent response, it must be recognized that plaintiff insurers are likewise innocent parties." 341 F.Supp. at 294.

As for public policy considerations, there is nothing unconscionable or inequitable about the exclusionary clause which was contained in this contract. It is true that such an exclusion significantly limits the protection afforded to outside or innocent corporate officials under D & O policies. But there is no legal barrier to the making of contracts of insurance that would protect innocent insureds against loss of coverage because of the fraud of another. Various commentators have suggested procedures by which this end could be accomplished. *See, e.g.,* Schaeftler, *supra,* at 171. Of course, an insurer issuing a D & O

policy with such protection for innocent directors will bear increased risks, and a corporation seeking such a policy must expect to be charged a higher premium than it would pay for a like policy without such an extension of coverage.

The granting of summary judgment dismissing plaintiffs' claims against American Home disposes of this case entirely, since American Home's third-party complaint against Touche Ross seeks indemnification only in the event it is liable to plaintiffs. An order dismissing this case will be issued forthwith.